UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| PAYMENT ALLIANCE INTERNATIONAL, INC., ) | Index No.: 07 CIV 8685 (B.S.J.) |
| ) | Hon. Barbara Jones |
| Plaintiff, ) |  |
| ) |  |
| - against - ) |  |
| ) |  |
| MANUEL FERREIRA, ) |  |
| ) |  |
| Defendant. ) |  |
| ) |  |
| ) |  |

---

## DEFENDANT MANUEL FERREIRA'S RESPONSE IN OPPOSITION TO PLAINTIFF PAYMENT ALLIANCE INTERNATIONAL, INC.'S APPLICATION FOR A PRELIMINARY INJUNCTION WITH TEMPORARY RESTRAINTS

JAFFE RAITT HEUER & WEISS, P.C.
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
248.351.3000

Attorneys for Defendant
Manuel Ferreira

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... iii

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 1

    FERREIRA'S EMPLOYMENT WITH PAI ................................................................................ 1

    FERREIRA'S EMPLOYMENT ROLE AT PAI ......................................................................... 2

    FERREIRA'S LIMITED INVOLVEMENT WITH THE COLT SOFTWARE
    SYSTEM ...................................................................................................................................... 2

    CYNERGY HAS NO DESIRE TO DUPLICATE THE COLT SYSTEM ................................. 3

ARGUMENT .................................................................................................................................. 4

I.    A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED AS
    PLAINTIFF HAS NOT SATISFIED THE REQUIRED ELEMENTS FOR
    SUCH EXTRAORDINARY RELIEF ....................................................................................... 4

    A.    STANDARD FOR GRANTING A PRELIMINARY INJUNCTION ....................... 4

    B.    PLAINTIFF HAS NOT SHOWN THAT IT WILL SUFFER
        IRREPARABLE HARM ................................................................................................ 5

        1.    THE INEVITABLE DISCLOSURE DOCTRINE DOES NOT
            APPLY IN THIS CASE ................................................................................... 5

        2.    THE EMPLOYMENT AGREEMENT IS NOT ANCILLARY
            TO THE SALE OF EDR .................................................................................. 8

    C.    PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS OF
        ITS CLAIMS ................................................................................................................. 10

        1.    THE NON-COMPETE PROVISION OF THE
            EMPLOYMENT CONTRACT WILL NOT BE ENFORCED
            UNDER NEW YORK LAW ............................................................................ 10

            a.    Specific Enforcement of the Non-Compete Covenant
                Would Not Protect any "Legitimate Interest" of
                Plaintiff ............................................................................................. 11

            b.    The Non-Compete is Not Reasonable in Scope and
                Duration and Evidences Overreaching on the Part of
                Plaintiff ............................................................................................. 14

i

2.   PLAINTIFF   WILL   NOT   SUCCEED   ON   ITS
MISAPPROPRIATION OF TRADE SECRETS CLAIM .................................15

D.   THE BALANCE OF HARDSHIPS TIPS IN FAVOR OF FERREIRA ................18

CONCLUSION ...............................................................................................................19

1451908 01

## TABLE OF AUTHORITIES

Page

**Cases**

*Abraham Zion Corp. v. Lebow*, 593 F.Supp. 551, 56 (S.D.N.Y. 1984) .......... 18

*Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.*, 003 WL 328302,
   *5 (S.D.N.Y. 2003) .......... 10

*Ashland Mgmt. Inc. v. Janien*,
   624 N.E.2d 1007 (N.Y. 1993) .......... 11, 16

*BDO Seidman v. Hirshberg*, 712 N.E.2d 1220 (N.Y. 1999) .......... 10, 11, 15

*Bell & Howell v. Masel Supply Co.*, 719 F.2d 42 (2d Cir. 1983) .......... 5

*Bijan Designer for Men, Inc., v. Katzman*,
   1997 WL 65717 (S.D.N.Y. Feb. 7, 1997) .......... 16

*Business Intelligence Servs., Inc. v. Hudson*, 580 F.Supp. 1068 (S.D.N.Y. 1984) .......... 7

*Catalogue Serv. of Westchester, Inc. v. Henry*, 484 N.Y.S.2d 615 (N.Y. App.Div.
   1985) .......... 12

*Columbia Ribbon & Carbon Manufacturing Co., Inc., v. A-1-A Corporation*, 42
   N.Y.2d 496, 369 N.E.2d 4 (N.Y. 1977) .......... 9, 10, 16

*Computer Associates Intern., Inc. v. Bryan*, 754 F.Supp. 982 (E.D.N.Y. 1992) .......... 4

*Continental Group, Inc. v. Kinsley*, 422 F.Supp. 838 (D.Conn. 1976) .......... 6

*D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503 (2d Cir. 2006) .......... 10

*DoubleClick, Inc. v. Henderson*,
   1997 WL 73143 (Sup.Ct. N.Y. Cty. 1997) .......... 14

*Earthweb, Inc. v. Schlack*,
   71 F.Supp.2d 299 (S.D.N.Y. 1999) .......... passim

*Estee Lauder Companies, Inc. v. Batra*,
   430 F.Supp.2d 158 (S.D.N.Y. 2006) .......... 7

*Inflight Newspapers, Inc. v. Magazines In-Flight, LLC*,
   990 F.Supp. 119, 130 (E.D.N.Y. 1997) .......... 13, 17

*Integrated Cash Management Services v. Digital Transactions, Inc.*, 920 F.2d 171 (2d
   Cir. 1990) .......... 16, 17

*International Paper Company v. Suwyn*,
   966 F.Supp. 246 (S.D.N.Y. 1997) .......... 6, 17

1451908.01

*Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547 (E.D.N.Y. 1995) ............................ 17, 19

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979) ................ 4

*JGS Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75 (2d Cir. 1990) .......................... 5

*Leon M. Reimer & Co., P.C. v. Cipolla,*
   929 F. Supp. 154 (S.D.N.Y. 1996) ............................................................ 15

*Lumex, Inc. v. Highsmith*, 919 F.Supp. 624 (E.D.N.Y. 1996) ...................... 5, 7, 8, 9

*Lund v. Agmata Washington Enters, Inc.* 190 A.D.2d 577 (1ˢᵗ Dept. 1993) ............ 9

*Manhattan Real Estate Equities Group, LLC v. Pine Equity, NY, Inc.*, 16 App. Div. 3d
   292 (1ˢᵗ Dept. 2005) ............................................................................ 9

*Marietta Corp. v. Fairhurst,*
   301 A.D.2d 734, 754 N.Y.S.2d 62 (N.Y. 3ʳᵈ Dept. 2003) ...................... 5, 18

*Medical Society of the State of New York v. Toia*, 560 F.2d 535 (2d Cir. 1977) .......... 4

*Misys Int'l Banking Systems, Inc. v. Two Four Systems*, 800 N.Y.S.2d 350 (table),
   2004 WL 3058144 (Sup. Ct. N.Y. Cnty., Nov. 23, 2004 (Fried, B.J.) ............ 7

*Monovis, Inc. v. Aquino*, 905 F. Supp. 1205 (W.D.N.Y. 1994) ............................ 7

*Pella Windows & Doors v. Buscarnera*, 2007 WL 2089298, *4 (E.D.N.Y. July 18,
   2007) ...................................................................................... 13

*PSC Inc v. Reiss*, 111 F.Supp.2d 252 (W.D.N.Y. 2000) ............................ 12, 13

*Purchasing Associates, Inc. v. Weitz*, 13 N.Y.2d 267, 196 N.E.2d 245 (N.Y. 1977) ........ 9, 10

*Reed, Roberts Assocs., Inc., v. Strauman,*
   40 N.Y.S.2d 303, 353 N.E.2d 590 (N.Y. 1976) ............................ 10, 17, 19

*Silipos, Inc. v. Bickel*, 2006 WL 2265055 (S.D.N.Y. Aug. 8, 2006) .............. 12, 17

*Stackrow & Co., C.P.A.'s, P.C. v. Skavina*, 9 A.D. 3d 805 ............................ 15

*Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63 (2d. Cir. 1999) ............................ 10

*Valenti v. Drory,*
   836 N.Y.S.2d 495, 2007 WL 419332, *1 (N.Y.Sup. Ct., N.Y. Cnty, Feb 7, 2007) ........ 9

**Other Authorities**
Restatement (Second) of Torts Section 757 (1979) ............................ 11

## PRELIMINARY STATEMENT

Defendant Manuel Ferreira ("Ferreira") submits this memorandum of law in response to this Court's Order to Show Cause with Temporary Restraints and in opposition to the entry of a preliminary injunction enjoining Ferreira from working at, or providing services for, Cynergy Data.

## STATEMENT OF FACTS

Plaintiff Payment Alliance International, Inc. ("PAI" or "Plaintiff") is a provider of electronic payment processing services ("EPP"). *See* Verified Complaint, ¶ 10. Cynergy Data ("Cynergy") is a leading provider of EPP services in the United States. Defendant Manuel Ferreira ("Ferreira") is a former employee of PAI. *See* Affidavit of Manuel Ferreira in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶ 1, attached as Exhibit A.

### *Ferreira's Employment with PAI*

Ferreira's employment with PAI resulted from PAI's acquisition of his former employer, Electronic Data Resources, Inc ("EDR"). *Id.* The acquisition of EDR was presented to Ferreira, and other employees of EDR, as a management buyout of EDR. *Id* At the time of EDR's buyout by PAI, Bill Blakley, the President of EDR, approached Ferreira and asked him to sign the Employment Agreement containing the non-compete provisions at issue. *See* Supplemental Affidavit of Manuel Ferreira, ¶ 2, attached as Exhibit B. Ferreira explained that his employment in the EPP business was his livelihood and the only industry in which he had ever worked. *Id.* Blakely indicated and represented that the non-compete would never prevent his employment in the industry *Id.*

1

### *Ferreira's Employment Role at PAI*

Ferreira's role at PAI was in operations, not sales. *Id.* at ¶ 4. Ferreira had very little direct involvement with PAI's sales channels, and, as a result, has little meaningful customer information relating to PAI's merchant accounts. *Id.* Likewise, Ferreira's prospective job duties at Cynergy involves operations management, and not sales. *Id.*

### *Ferreira's Limited Involvement with the Colt Software System*

PAI's principal focus in this case is its purported concern that Ferreira will misappropriate PAI's alleged substantial investment in a new software system, the so-called Colt System, which, it is claimed, speeds up the approval of new merchants by automating what PAI apparently had to do manually before.

Ferreira's involvement in the actual development of the Colt software was quite limited. *Id.* ¶ 1. In fact, Dawn Murray was the project manager for development of the Colt software system. Dawn worked directly with the systems group with respect to the architecture, operational needs, and setup of the Colt software system. *Id.* Dawn was involved in conference calls regarding the project that occurred twice per week and, starting two months ago, nearly every day. Ferreira was involved in less than five of these calls in total. Ferreira's familiarity with the intricacies of the Colt software system is so limited, that any duplication or transfer of meaningful information would be impossible. *Id.*

In any event, the Colt system is far from final development or implementation. *See* Affidavit of Manuel Ferreira, ¶ 3. Upon Ferreira's departure from PAI, certain parts of Colt were unfinished and neither tested nor fully implemented. *Id.* More importantly, Ferreira was not hired by Cynergy with the intention that Ferreira, with no computer programming

2

knowledge, would misappropriate the Colt software. *Id.* Rather, Ferreira was hired by Cynergy for his extensive management experience in the EPP industry. *Id.*

### *Cynergy Has No Desire to Duplicate the Colt System*

Though both companies do business in the EPP services industry, it should be noted that Cynergy is far beyond PAI in terms of size, technology, merchant volume, and software development. PAI contends that the Colt system "revolutionizes the entry and management of EPP data" by eliminating, among other things, certain processes currently performed manually by PAI. *See* Verified Complaint, ¶ 29-30. Though, if true, this is certainly good news for PAI, it is far behind Cynergy's own software system, titled the VIMAS system, which is already implemented and developed. In fact, the VIMAS system already does everything that PAI contends the Colt system might do. *See* Affidavit of Andres Ordonez, ¶ 4, attached as Exhibit C. The VIMAS system already interfaces with credit bureaus and processing systems, eliminates the need for manual verification of data, and approves merchant applications within an hour for those applications (close to 90%) submitted by Cynergy's sales force electronically. *Id.* at ¶ 5-6. In fact, the VIMAS system was completely automated more than four years ago. As a result, the programming that is the basis of the Colt system is nothing new or surprising as it has been utilized by Cynergy for more than four years. *Id.* at ¶ 7. Additionally, the VIMAS system not only handles customer boarding (which is all the Colt system does), but customer services, risk management, collections, application processing, data entry and residual reporting as well. Ferreira Affidavit, ¶ 8. It eliminates far more processes and human interface than does the proposed COLT system still in development by PAI. *Id.*

Finally, the Colt system was designed to interface with PAI's front-end and back-end processor, Global, and its merchant bank, HSBC. Cynergy uses Paymentech and TSYS as its

front-end and back-end processors and Bank of America as its merchant bank. As a result, the Colt system is completely incompatible with Cynergy because it is designed to interface with specific software and forms used by PAI's business partners and would not work with Cynergy's business partners. *Id.* at ¶ 9.

Considering the advanced nature and superiority of the VIMAS system, Cynergy has no interest in copying the Colt system as it would be a "step down" in terms of technology for Cynergy. Ordonez Affidavit, ¶ 8-10.

## ARGUMENT

### I.  A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED AS PLAINTIFF HAS NOT SATISFIED THE REQUIRED ELEMENTS FOR SUCH EXTRAORDINARY RELIEF.

#### A.    STANDARD FOR GRANTING A PRELIMINARY INJUNCTION

Preliminary injunctive relief is "an extraordinary and drastic remedy which should not be routinely granted." *Earthweb, Inc. v. Schlack*, 71 F.Supp. 2d 299, 308 (S.D.N.Y. 1999) *citing Medical Society of the State of New York v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977) "Accordingly, the movant has the burden of establishing the following elements: (1) irreparable harm or injury, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in favor of the movant. *Earthweb*, 71 F.Supp. 2d at 308 *citing Computer Associates Intern., Inc. v. Bryan*, 754 F.Supp. 982, 986 (E.D.N.Y. 1992) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). Plaintiff is not entitled to a preliminary injunction as Plaintiff fails to offer sufficient proof that it will suffer irreparable harm or injury and that it will likely succeed on the merits of its claims.

4

### B.    PLAINTIFF HAS NOT SHOWN THAT IT WILL SUFFER IRREPARABLE HARM

A demonstration of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Earthweb*, 71 F.Supp.2d at 308 *quoting Bell & Howell v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983). The mere possibility of harm is not sufficient: the harm must be imminent and the movant must show it is likely to suffer irreparable harm if equitable relief is denied. *Earthweb*, 71 F.Supp.2d at 308. "If irreparable harm is remote, speculative, or a mere possibility, the motion must be denied. *Id.* As the Second Circuit has noted, "likelihood, sets, of course, a higher standard than 'possibility.'" *JGS Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990). Furthermore, "[e]ssential to a showing of irreparable harm is the unavailability or at least inadequacy of a money damages award." *Lumex, Inc. v. Highsmith*, 919 F.Supp. 624, 627 (E.D.N.Y. 1996). Plaintiff has failed to meet its considerable burden of demonstrating irreparable harm.

### 1.    THE INEVITABLE DISCLOSURE DOCTRINE DOES NOT APPLY IN THIS CASE

Plaintiff argues that its burden of demonstrating irreparable harm is satisfied and, as a result, it does not need to prove the "likelihood" of irreparable harm based on the "inevitable disclosure doctrine."[1] Plaintiff contends that Ferreira's mere access to confidential information, particularly, the Colt system, coupled with the potential for disclosure to Cynergy, is sufficient to establish the irreparable harm necessary for injunctive relief. *See* Memorandum of Law, pg. 11-12. However, Plaintiff's reliance on the inevitable disclosure doctrine is misplaced

---

[1] Notably, the state courts of New York have not yet adopted the "inevitable disclosure doctrine." *See Marietta Corporation v. Fairhurst*, 301 A.D.2d 734, 736 (N.Y. 3d 2003) (reversing the lower court's use of the doctrine).

For example, the Federal Courts applying the inevitable disclosure doctrine only apply it in those limited circumstances "where the movant competes directly with the new employer and the transient employee possesses highly confidential or technical knowledge concerning manufacturing processes, marketing strategies, or the like." *Earthweb*, 71 F.Supp.2d at 309. "[T]he inevitable disclosure doctrine treads an exceedingly narrow path through judicially disfavored territory. Absent evidence of <u>actual misappropriation</u> by an employee, the doctrine should be applied only in the <u>rarest</u> of cases. *Id.* at 310. "While the inevitable disclosure doctrine may serve the salutary purpose of protecting a company's investment, its application is fraught with hazards. *Id.* As a result, factors to consider in weighing the appropriateness of granting injunctive relief where the Plaintiff has offered no proof of actual misappropriation of a trade secret by the defendant, are whether: (1) the employers in question are direct competitors providing the same or very similar products or services; (2) the employee's new position is nearly identical to his old one, such that he could not reasonably be expected to fulfill his new job responsibilities without utilizing trade secrets of his former employer; and (3) the trade secrets at issues are highly valuable to <u>both</u> employers. *Id.*

Moreover, the doctrine is limited to those employees holding highly technical expertise in high tech industries, *International Paper Company v. Suwyn*, 966 F.Supp. 246, 258 (S.D.N.Y 1997), or where the present and former employers were "endeavoring to develop the <u>identical</u> product" and the breaching employee had "learned exactly how [his former employer] was making the [product]," including all details concerning the production process, which refinements in the process were producing improvements and failures, and how near to success development efforts were." *International Paper*, 966 F.Supp. at 259; *see also Continental Group, Inc. v. Kinsley*, 422 F.Supp. 838, 841 (D.Conn. 1976) (engineering in the field of plastic container process development); *Business Intelligence Servs., Inc. v. Hudson*, 580 F.Supp. 1068

(S.D.N.Y. 1984)(applying doctrine where former employee held intricate knowledge of her former employer's software, including knowledge of source codes, which would allow her to develop or improve competing software product "with little or no effort")

Here, Ferreira is not skilled in the area of computer programming, let alone knowledgeable in the field of software design and development. *See* Supplemental Ferreira Affidavit, ¶ 1    Additionally, during his tenure with Plaintiff, Ferreira had only general managerial involvement with the Colt software process. He certainly would not be able to duplicate the Colt system even if Cynergy wanted him to. *Id.*

His work with PAI was focused on his management expertise, not the development of highly technical, proprietary, or secret information. Ferreira did not design the Colt system or participate in writing the "source code." *Id.* Rather, PAI's employee, Dawn Murray, was the project manager and involved in the development of the Colt system

More important, the Colt system is not "highly valuable" to Cynergy. Cynergy has no need or desire to mimic the Colt system as the VIMAS system is already far superior to the COLT system. *See* Affidavit of Andres Ordonez, ¶ 4-10. It already does the things PAI touts as its trade secret technology, and has done so for the past four years.

Furthermore, Plaintiff's reliance on *Lumex*, and other cases for the proposition that the inevitable disclosure doctrine does apply, is misplaced.[2] 919 F.Supp. at 631. In *Lumex*, the former employer was engaged in the business of manufacturing and selling equipment in the

---

[2]  Plaintiff's reliance on the following cases is also misplaced: *Estee Lauder Companies, Inc. v Batra*, 430 F.Supp.2d 158 (S.D.N.Y. 2006)(former employee's intricate knowledge of future cosmetic products and timeline for development and release would be inevitably disclosed to new employer directly competing in same field of cosmetics); *Misys Int'l Banking Systems, Inc. v Two Four Systems*, 800 N.Y.S.2d 350 (table), 2004 WL 3058144 (Sup. Ct. N.Y. Cnty., Nov. 23, 2004 (Fried, B.J.)(former employee who designed software system left for competitor employer seeking to design new software system to directly replace the other); *Monovis, Inc v Aquino*, 905 F.Supp. 1205, 1234 (W.D.N.Y. 1994) (former employee held special expertise in designing and developing a single-screw compressor for the United States Navy).

health fitness industry and sought to enjoin its former employee from working for its competitor, Life Fitness. The employer manufactured a brand called "Cybex" and Life Fitness had just acquired a license to distribute a line of fitness equipment that was, like Cybex, a "single station variable resistance weight stacked machine" or, in other words, a rose by another trade name. The former employee was an <u>engineer</u> by training who, as worldwide marketing manager, was a member of Lumex's elite strategic planning committees and "privy" to information on prototypes for new and future products. The court based it decision on more than the fact that the new employer and the plaintiff were "competitors." Rather, the court emphasized that "companies in the health fitness industry are very aggressive and dynamic" and that it was a "copy cat industry," which gave a selling advantage to whoever was "first to the market" with a new concept. *Id.* at 629. As a result, the court concluded that "it would be impossible for [defendant] not to divulge confidential information" as part of his new employment. *Id.* Clearly, the application of the "inevitable disclosure" doctrine rests on a unique set of facts that are not present in the instant action. Here, Cynergy's CIO has sworn that Cynergy has no need for Colt, and that VIMAS already does everything Colt will do, and far more. As a result, the doctrine does not apply and, therefore, Plaintiff is not relieved of its burden in showing the likelihood of irreparable harm.

### 2.   THE EMPLOYMENT AGREEMENT IS NOT ANCILLARY TO THE SALE OF EDR.

Plaintiff also attempts to avoid proving the likelihood of irreparable injury by contending that the Employment Agreement was entered into as the result of a sale of a business. Though creative in its analysis, Plaintiff's argument is nothing more than smoke and mirrors. The New York courts do recognize non-competes "by the seller not to compete with the buyer after the

sale" of the seller's business. But that scenario does not apply here. *See Purchasing Associates, Inc. v. Weitz*, 13 N.Y.2d 267, 271 (1977).

Here, Ferreira entered into the Employment Agreement to continue his employment with the newly merged company and to convert the shares he acquired as part of his compensation and benefits with EDR. Unlike the cases relied upon by Plaintiff, Ferreira was not a signatory to an asset purchase agreement, but, rather, was merely an employee of the business being purchased. *See Misys Int'l Banking Syst.*, 2004 WL 3058144, *1 (involving <u>seller</u> of a business, not an employee, agreeing to non-compete pursuant to the sale); *Valenti v. Drory*, 836 N.Y.S.2d 495, 2007 WL 419332, *1 (N.Y. Sup. Ct., N.Y. Cnty, Feb 7, 2007) (<u>owners</u> of carpet installing business entered into non-compete provisions upon the sale of their business to the plaintiff buyer); *Manhattan Real Estate Equities Group, LLC v. Pine Equity, NY, Inc.*, 16 App. Div. 3d 292, 292 (1st Dept. 2005) (<u>seller of company</u> entered into non-compete provision upon the sale of its business to plaintiff buyer) *citing Lund v. Agmata Washington Enters, Inc.*, 190 A.D.2d 577 (1st Dept. 1993) (<u>sole shareholder</u> and officer of business entered into non-compete upon the sale of the business to plaintiff buyer); *Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 398 N.Y.S. 2d 1004, 1006 (1977) (involving employment contract and not the sale of a business); *Lumex, Inc.*, 919 F. Supp. at 628 (same). At all times prior to the merger, Ferreira was a mere employee that owned stock pursuant to his stock option benefit plan. This is not a case where Ferreira negotiated for the sale of his own business and, pursuant to the sale, agreed not to compete with the business he sold. Rather, this is a case where Ferreira was an employee of the business sold and, without adequate bargaining power, was told to sign the non-compete provision or risk losing his employment with his newly formed employer. Clearly, Plaintiff's disingenuous attempt to compare Ferreira's stock option benefit with the "sale of a business" is

9

evident of its overreaching and implicit acknowledgement that it cannot otherwise satisfy the

likelihood of irreparable injury requirement for the granting of a preliminary injunction.[3]

## C.    PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

"[I]n addition to demonstrating irreparable harm, the moving party must make a clear or

substantial showing of a likelihood of success on the merits." *D.D. ex rel. V.D. v. New York City

Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006).

### 1.    THE NON-COMPETE PROVISION OF THE EMPLOYMENT CONTRACT WILL NOT BE ENFORCED UNDER NEW YORK LAW.

Under New York law, restrictive covenants are subject to careful judicial scrutiny.

*Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 369 N.E.2d 4, 6 (N.Y.

1977). This scrutiny follows from "powerful considerations of public policy which militate

against sanctioning the loss of a man's livelihood...." *Purchasing Associates, Inc. v. Weitz*, 13

N.Y.2d 267, 196 N.E.2d 245, 247 (N.Y. 1977) *quoted in Earthweb*, 71 F.Supp. at 314. Thus,

"restrictive covenants must satisfy an 'overriding requirement of reasonableness.'" *Reed, Roberts

Assocs., Inc., v. Strauman*, 353 N.E.2d 590, 592 (N.Y. 1976).

In *BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1223 (N.Y. 1999), the New York Court

of Appeals held that specific enforcement of a non-compete covenant is appropriate only if the

---

[3]    In addition, Plaintiff places emphasis on dicta found in *Ticor Title Ins. Co. v. Cohen*, for the proposition that a clause in the Employment Agreement relating to the insufficiency of monetary damages satisfies the "likelihood" of irreparable injury requirement. 173 F.3d 63, 69 (2d Cir. 1999). However, Plaintiff's reliance is misplaced. In *Ticor*, the court found the former employee *actually* solicited a long-standing customer of the plaintiff. The court coupled the former employee's solicitation of the customer with the contract's recitation of the inadequacy of monetary damages to conclude that irreparable injury was present. As a result, PAI cannot rely on this provision in the Employment Agreement without more. *See Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.*, 2003 WL 328302, *5 (S.D.N.Y. 2003) (holding that "[a] contractual stipulation to the effect that irreparable harm exists is not itself dispositive" but should be coupled with a separate showing of substantial harm to find a likelihood of irreparable harm") Here, PAI has not made any separate showing of substantial harm or injury.

covenant is: (1) necessary to protect the employer's legitimate interests; (2) reasonable in time and area; (3) not unreasonably burdensome to the employee; and (4) not harmful to the general public.

> **a.    *Specific Enforcement of the Non-Compete Covenant Would Not Protect any "Legitimate Interest" of Plaintiff.***

Specific enforcement of the non-compete provision is inappropriate as no legitimate interest of Plaintiff would be served by its enforcement. An employer may assert only four types of "legitimate interests" under the first prong of the *BDO Sediman* standard: (1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique." 712 N.E.2d at 1224-24 *cited by Earthweb*, 71 F.Supp. 2d at 312. The policy underlying this strict approach rests on notions of employee mobility and free enterprise. *Earthweb*, 71 F.Supp. 2d at 312. "[O]nce the term of an employment agreement has expired, the general public policy favoring robust and uninhibited competition should not give way merely because a particular employer wishes to insulate himself from competition." *Id.* If an employer cannot show one of the four legitimate interests, the non-compete provision will not be enforced by a New York courts. *Id.*

Here, Plaintiff only alleges that specific enforcement of the non-compete would prevent Ferreira's "solicitation or disclosure of trade secrets." A trade secret is "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Ashland Mgmt. Inc. v. Janien*, 624 N.E.2d 1007, 1013 (N.Y. 1993) (quoting Restatement (Second) of Torts Section 757, cmt. b (1979)). As they pertain to restrictive covenants, New York courts have cautioned against overzealous application of this expansive definition. *Silipos, Inc. v. Bickel*,

11

2006 WL 2265055 (S.D.N.Y. Aug. 8, 2006). As a result, recognition of trade secrets in the non-compete context does not cover the "mere knowledge of the intricacies of a business operation." *Id.* quoting *Catalogue Serv. of Westchester, Inc. v. Henry*, 484 N.Y.S.2d 615, 616 (N.Y. App.Div. 1985).

Plaintiff contends that "Ferreira possesses detailed information" concerning the Colt system and the knowledge he possesses is therefore protected as a trade secret.[4] *See* Memorandum of Law, pg. 13. Though Ferreira may possess some general knowledge relating to the Colt system, his lack of technical knowledge is insufficiently specific to qualify as a trade secret. *See Silipos, supra,* at *4. In *Silipos,* the plaintiff employer brought an action for specific enforcement of its non-compete agreement with the former employee. The plaintiff employer alleged that the former employee possessed information relating to gel formulations it used in footpads and would reveal the information to his new employer. The court disagreed and reasoned that the former employee's knowledge was insufficiently specific to qualify as a trade secret. It noted that the former employee did not have knowledge about the chemicals used in gel formulation and, since he was not an engineer, he lacked technical knowledge to meaningfully inform others on how to replicate the gel formulation. As a result, the court would not enforce the non-compete provision as the employer could not offer a "legitimate interest" for doing so.

The same result was reached in *PSC Inc v. Reiss*, 111 F.Supp.2d 252 (W.D.N.Y. 2000). In *Reiss,* the plaintiff, a manufacturer of self-checkout systems for grocery stores, brought action to enjoin its former sales manager from working for a competitor. The plaintiff alleged that the former employee was involved in a secret "project" while an employee of plaintiff and obtained

---

[4]    Notably, other than the use of adjectives and platitudes, Plaintiff does not substantiate with any type of factual detail the type or level of "detailed information" Ferreira possesses.

12

confidential information about a proposed self-scanning system. *Id.* at 255. The plaintiff alleged that the employee would most likely divulge such confidential information to his new employer. In declining to find a protectable trade secret, the court noted that the former employee was not "a scientist, an engineer, or a computer specialist" or "privy to the highly confidential information relating to software development and engineering that makes such a product truly unique." *Id.* at 257. It further reasoned that the employee's involvement with the project was limited to general discussions about how the unit might be designed and any input relative to what customers would prefer in such a product. The court concluded that the employee's general knowledge relating to the proposed design was nothing that warranted protection as a trade secret. *Id.* at 258.

Here, Ferreira only possessed general knowledge of the Colt system and nothing more. Besides vaguely alleging that Ferreira possessed "detailed information" relating to the system, Plaintiff fails to offer any proof that Ferreira possesses any technical knowledge relating to the Colt System that warrants trade secret protection. *See also EarthWeb,* 71 F.Supp. 2d at 316 (former employee possessed only generalized level of input and could therefore have not acquired the type of information traditionally afforded trade secret protection); *Inflight Newspapers, Inc. v. Magazines In-Flight, LLC,* 990 F.Supp. 119, 130 (E.D.N.Y. 1997) (drawing a distinction between an employee that possesses generalized knowledge of the employer's products with an employee who actually designs the software and hardware); *Pella Windows & Doors v. Buscarnera,* 2007 WL 2 089298, *4 (E.D.N.Y. July 18, 2007) (former employee's general knowledge of computer system and operations not sufficient to constitute a trade secret in danger of being disclosed). Clearly, the general knowledge held by Ferreira of the Colt system is not subject to protection as a trade secret. As a result, Plaintiff does not have a

"legitimate interest" in the specific enforcement of the non-compete provision and, therefore, the non-compete is unenforceable.

> **b.** **_The Non-Compete is Not Reasonable in Scope and Duration and Evidences Overreaching on the Part of Plaintiff._**

Even if the Court were to find Ferreira's general knowledge a protectable trade secret, the non-compete provision is still unenforceable. The second element of the _BDO Seidman_ standard requires the non-compete to be reasonable in scope and duration. In particular, where the non-compete involves employers and employees in a dynamic and modern industry, the duration of the non-compete must be short. _Earthweb, Inc. v. Schlack_, 71 F. Supp. 2d 299 (S.D.N.Y. 1999), aff'd. 2000 WL 1093320 (2d Cir. 2000) (one-year restriction deemed unreasonable in information technology industry); _DoubleClick, Inc. v. Henderson_, 1997 WL 73143 (Sup. Ct. N.Y. Cty. 1997) (same). Here, it is undisputed that the credit card processing industry is a changing and fast moving industry. _See_ Verified Complaint, ¶ 15 ("The market for EPP services is growing rapidly with the proliferation of credit, debit and gift cards, ATMs, and the improvement of hardware and software applications.") As a result, the two-year restriction is unreasonable as it overreaches. _See Earthweb_, 71 F. Supp.2d. at 299.

Moreover, the non-compete fails to include a geographic restriction. _See_ Employment Agreement, Section 7(a). In essence, Plaintiff seeks to prevent Ferreira from working for any employer _in the world_ that could be a competitor of the Plaintiff. Such a worldwide geographic scope, or lack thereof, clearly evidences overreaching on the part of the Plaintiff. _See Earthweb_, 71 F.Supp.2d at 299.

Furthermore, to the extent Plaintiff asks this Court to "blue pencil" the non-compete provisions by modifying the overreaching terms, the Plaintiff's actions clearly prevent this Court from doing so. In order for a court to "blue pencil" an overreaching non-compete provision, the

14

"employer also must demonstrate good faith—"an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct"—to warrant the possibility of partial enforcement." *BDO Seidman*, 712 N.E.2d at 1226. Here, the non-compete provision overreaches in terms of duration and scope. Additionally, the Plaintiff threatened Ferreira that his employment would be in jeopardy if he did not agree to sign the non-compete provision while at the same time promising him it would not be enforced. Clearly, the Plaintiff's misrepresentations, overreaching and use of dominant bargaining power prevents the possibility of partial enforcement in this case. *See EarthWeb*, F.Supp.2d. at 313; *Leon M. Reimer & Co., P.C. v. Cipolla*, 929 F.Supp. 154, 161 (S.D.N.Y. 1996) (although courts applying New York law have the power to modify covenants that are unreasonable as drafted and enforce them as modified, "the infirmities of [the covenant in the instant case] are simply too patent for this type of restructuring. To bring [the covenant here] in confirming with the law would require this Court essentially to rewrite the entire section, an exercise not appropriate here); *see also Stackrow & Co., C.P.A.'s, P.C. v. Skavina*, 9 A.D. 3d 805 (partial enforcement denied where employer had used superior bargaining position in conditioning employment on employee's execution of overbroad noncompete provision); *Columbia Ribbon & Carbon Manufacturing Co., Inc., v. A-1-A Corporation*, 369 N.E.2d 4, 6 (N.Y. 1977) (declining to partially enforce overreaching noncompete provision). As a result, the non-compete provision is unenforceable and the Plaintiff's success on its claim for breach of the provision is unlikely to succeed on the merits.

## 2. PLAINTIFF WILL NOT SUCCEED ON ITS MISAPPROPRIATION OF TRADE SECRETS CLAIM.

Under New York law, a trade secret is defined as "any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an

opportunity to obtain an advantage over competitors who do no know or use it." *Earthweb*, 71
F.Supp. 2d at 314 (citations omitted). The courts in New York consider the following factors in
determining whether information constitutes a trade secret: "(1) the extent to which the
information is known outside of the business; (2) the extent to which it is known by employees
and others involved in the business; (3) the extent of measures taken by the business and its
competitors; (5) the amount of effort or money expended by the business in developing the
information; and (6) the easy or difficulty with which the information could be acquired or
duplicated by others." *Id. quoting Ashland Management Inc. v. Janien*, 624 N.E.2d 1007 (N.Y.
1993) (quoting the Restatement definition)

Here, and most importantly, Ferreira has not misappropriated any information that
Plaintiff argues to be a trade secret. Notably, Plaintiff does not even offer proof of any
misappropriation by Ferreira. Rather, Plaintiff relies heavily on the "inevitable disclosure
doctrine" in lieu of providing actual proof that Ferreira has misappropriated any trade secrets of
Plaintiff. However, the basis of a misappropriation claim requires <u>actual</u> misappropriation by the
defendant. *See Integrated Cash Management Services v. Digital Transactions, Inc.*, 920 F.2d
171, 173 (2d Cir. 1990) (holding that an essential element of a claim for misappropriation
requires proof that the "defendant is **using** the trade secret."); *Columbia Ribbon & Carbon Mfg.
Co.*, 42 N.Y.2d 496, 369 N.E.2d at 6-7 (injunctive relief denied where there was no showing that
any secret information was disclosed and where plaintiff's sworn representations that no secrets
had been involved in his employment, that he had taken possession of no customer lists or files
were not controverted); *see also Bijan Designer for Men, Inc., v. Katzman*, 1997 WL 65717
(S.D.N.Y. Feb. 7, 1997)(injunction denied for, among other reasons, lack of irreparable harm
despite taking of confidential documents and violation of non-solicitation agreement where
defendant later returned the documents); and *Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F.Supp. 547

(E.D.N.Y. 1995) (defendants' stipulation that they would not use certain confidential information rendered issue of enforcement of restrictive covenant "moot").

Moreover, Ferreira's generalized level of input did not permit him access to the type of information traditionally afforded trade secret protection. For example, in *Inflight Newspapers*, the court drew a distinction between an employee pursuing "a general conceptual goal by incorporating specific needs and wants in the form of instructions for a programmer" and the nuts and bolts of actually designing the software and hardware architecture. 990 F.Supp. at 130; *see also Silipos, Inc. v. Bickel*, 2006 WL 2265055 (S.D.N.Y. Aug. 8, 2006) (finding former employee's lack of technical knowledge about the chemicals used in former employer's gel formulations will prevent him from meaningfully informing others on how to duplicate it). An employee providing only "conceptual goals" does not acquire information protected by trade secret. *Id.* "A contrary holding, the New York Court of Appeals has emphasized, would make those in charge of operations or specialists in certain aspects of an enterprise virtual hostages of their employers." *International Paper*, 966 F.Supp. at 257 (quoting *Reed, Roberts Assoc*, 40 N.Y.S.2d at 680, 353 N.E.2d at 594).

Here, Ferreira learned only the conceptual goals that Plaintiff was seeking to incorporate into the Colt software system. Ferreira, as an employee with no computer programming skills, did not take part in the actual design of the software and hardware architecture of the Colt system. Rather, Dawn Murray, worked directly with the systems group with respects to the architecture, operational needs, and development of the Colt system. *See* Supplemental Affidavit of Ferreira, ¶ 2. As a result, Plaintiff's reliance on *Integrated Cash Management v Digital Transactions,* for the proposition that Ferreira's knowledge of the Colt system is a trade secret, is misplaced. 732 F.Supp. 370, 375-76 (S.D.N.Y. 1989). In *Integrated Cash Management*, the

17

former employees actively participated in writing the computer programs at issue. This is not the case in the instant action.

Furthermore, any knowledge acquired by Ferreira that relates to the Colt system could not be "acquired or duplicated" by others.[5] The Colt system, like any software application, comprises hundreds of thousands of source codes that form the backbone of the software. As discussed above, Ferreira is not a computer programmer or highly skilled in the area of software development and so could not know the source codes. It would be virtually impossible for Ferreira to memorize the source code of the Colt system and relay that information to Cynergy for duplication purposes. Regardless, the "mere recollection of information based on casual memory is not actionable." *See Abraham Zion Corp. v. Lebow*, 593 F.Supp. 551, 56 (S.D.N.Y. 1984). Additionally, the Colt system is designed to interface with Plaintiff's front-end and back-end processor, Global, and its merchant bank, HSBC. Cynergy does not use Global or HSBC and, as a result, would not be able to duplicate it for use with its own processing companies. Because Ferreira's disclosure of any trade secrets is remote and speculative, Ferreira's knowledge of the Colt system is not a protectable interest that warrants the protection of the non-compete provision.

## D.    THE BALANCE OF HARDSHIPS TIPS IN FAVOR OF FERREIRA

The balance of hardships tips decidedly in favor of Ferreira. If Ferreira is enjoined from working for Cynergy, or any other company in the electronic payment processing industry, Ferreira will be prevented from pursuing his chosen profession and occupation. Moreover, a

---

[5]    Additionally, Plaintiff vaguely alleges that Ferreira had access to information relating to PAI's other technology plans, its business and marketing strategies, budgets, and salary information relating to PAI employees. *See* Memorandum of Law, pg. 7-8. However, "mere knowledge of the intricacies of a business is simply not enough" to warrant protection as a trade secret. *Marietta Corp. v. Fairhurst*, 301 A.D.2d 734, 739, 754 N.Y.S.2d 62, 67 (N.Y. 3rd Dept. 2003) (citations omitted). Moreover, without any detail, these are just adjectives without substance.

two-year prohibition from working in the highly evolving and ever changing electronic payment processing industry would be the death knell of his career in the industry. Plaintiff seeks to bar Ferreira from employment in the only industry in which he truly has expertise. "[N]o restrictions should fetter an employee's right to apply to his own best advantage the skills and knowledge acquired by the overall experience of his previous employment." *Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*, 907 F.Supp. 547, 554 (E.D.N.Y. 1995) (quoting *Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 307 (1976)). *See, generally*, Supplemental Ferreira Affidavit, ¶ 5.

## CONCLUSION

For the reasons set forth above, Defendant Ferreira respectfully requests the Court to deny the Plaintiff's request for a preliminary injunction and grant any further relief the Court deems justified.

Respectfully submitted,

/s/ Peter M. Falkenstein
Peter M. Falkenstein (Michigan P61375)
Eric A. Linden (Michigan P33249)
Jonathan C. Myers (Michigan P69972)
JAFFE RAITT HEUER & WEISS, P.C.
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
248.351.3000
pfalkenstein@jaffelaw.com
elinden@jaffelaw.com
jmyers@jaffelaw.com

1451908.01

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

Index No.: 07 CIV 8685 (BSJ)

PAYMENT ALLIANCE INTERNATION, INC.,

            Plaintiff,

     -  against –

MANUEL FERREIRA,

            Defendant.

_____

### AFFIDAVIT OF MANUEL FERREIRA
### IN OPPOSITION TO PLANTIFF'S
### MOTION FOR PRELIMINARY INJUNCTION

       I, Manuel Ferreira, being first duly sworn, depose and say that I have personal knowledge of the matters set forth herein and, if sworn as a witness, I would be competent to testify as follows:

       1.    I was, until Friday, October 5, 2007, employed by Plaintiff, Payment Alliance International, Inc. ("PAI"). My employment with PAI resulted from PAI's acquisition of my former employer, Electronic Data Resources, Inc. ("EDR").

       2.    The "acquisition" was presented to us as little more than a management buyout of EDR. In connection with the "acquisition," I, along with several other employees, were told we were "expected" to convert at least 50% of our stock options in EDR to shares of PAI. There was little, if any, choice in the matter.

       3.    In its motion papers, PAI focuses much attention on my involvement with the development of the Colt software system. Despite PAI's statements to the contrary, the Colt

system, at least as of last Friday, was hardly on the verge of implementation. To the contrary, when I left, certain parts of the software system had not even been finished yet, much less tested and implemented. I would anticipate that the Colt system would not be ready for full-fledged implementation until early 2008, at the soonest. Regardless, I was not hired by Cynergy in order to misappropriate the Colt software. I was hired due to my management experience dealing with operational issues at a credit card processing company. My experience was gained at Nova and NDC as well as EDR.

4.      Cynergy's software system, called the Vimas system, is already far superior to that of the Colt system. The Vimas system not only handles customer boarding (which is all the Colt system does) but customer service, risk management, collections, application processing, data entry and residual reporting as well. It eliminates far more processees and human interface than does the proposed Colt system being developed by PAI. The Vimas system is both an internal and external system, meaning it functions both for internal operating purposes as well as an external business tool for customers. In my opinion, Cynergy would have no interest in implementing the Colt system and the process of trying to integrate the Colt system into the existing Vimas system at Cynergy would take inordinate effort and take considerable time, which in my opinion, would not be worth the significant investment it would undoubtedly require.

5.      Finally, the Colt system was designed to interface with PAI's front-end and back-end processor, Global, and its merchant bank, HSBC. Cynergy uses Paymentech and ISYS as its front-end and back-end processors and Bank of America as its merchant bank. Consequently, the Colt system would not even work at Cynergy because it is designed to interface with the

2

specific software and forms used by <u>PAI's business partners</u> and would not work with <u>Cynergy's</u> <u>business partners</u>.

6.    My compensation at Cynergy is $220,000 per year. If I am restrained from working for Cynergy for two years, PAI should be required to post a $440,000 bond to protect against the very likely possibility that injunctive relief would have been improvidently granted.

Further Affiant sayeth not.

I declare under penalty of perjury the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: 10 / 10 / 07

_Manuel A. Ferreira_
Manuel Ferreira

3

1450434 01

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Index No.: 07 CIV 8685 (BSJ)

PAYMENT ALLIANCE INTERNATIONAL, INC.,

Plaintiff,

-   against –

MANUEL FERREIRA,

Defendant.

## SUPPLEMENTAL AFFIDAVIT OF MANUEL FERREIRA
## IN OPPOSITION TO PLANTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

I, Manuel Ferreira, being first duly sworn, depose and say that I have personal knowledge

of the matters set forth herein and, if sworn as a witness, I would be competent to testify as

follows:

1      In my original Affidavit, I focused on the Colt software system which Plaintiff

emphasized in its moving papers seeking injunctive relief. I should add that my involvement in

the actual development of the Colt software was quite limited. Dawn Murray was the project

manager for this project. Dawn worked directly with the systems group with respect to the

architecture, operational needs and setup of the Colt software system. Dawn was involved in

conference calls regarding the project that occurred twice per week and, starting two months ago,

nearly every day. I was probably involved in less than five of these calls in total. It is

preposterous to allege that I am so familiar with the intricacies of the Colt software system that I

could, even if I wanted to, duplicate that software or transfer any meaningful information to

1452842.01

Cynergy in my new job. I am not a computer programmer or engineer. I do not know the source codes for the Colt system.

2.    I did not previously relate to the court how the Employment Agreement with EDR came about. At the time, Bill Blakey was President of Electronic Data Resources ("EDR") which was my employer. In connection with the transaction between EDR and the Plaintiff, Bill asked me to sign the Employment Agreement which contains the non-compete at issue in this case. I explained to Bill at the time that I had been involved in the bank card/merchant acquiring business for 16 years since my graduation from college. I explained that it was all I had known and was the only industry in which I had ever worked. Bill stated directly to me that the non-compete would never prevent me from working.

3.    Upon resigning, Bill acknowledged this previous conversation and indicated that, if it was up to him, he would not seek to enforce the non-compete. However, he indicated that Plaintiff wanted to make an example of me.

4.    My role at PAI was operational, not sales. As a result, I had very little direct involvement with Plaintiff's sales channels, and so I would have little meaningful customer information concerning Plaintiff's merchant accounts. Likewise, my prospective job duties at Cynergy involved operations, not sales. As my job duties at Cynergy will not involve sales of any kind, I do not object to a restriction which prohibits me from being involved in sales to any existing PAI merchant customers.

5.    PAI also makes much of the consideration I received in connection with the PAI-EDR transaction. As I indicated previously, I was in essence forced to convert my EDR stock into PAI stock. While PAI now claims that stock is worth $500,000, I point out that there is no way to truly value it, there is no market for it, and I could not sell it to live on even if I wanted to

2

Consequently, if the court prohibits me from taking the job I have accepted at Cynergy, I will have no means of supporting myself. I have a mortgage to pay and regular expenses. I cannot afford to be out of a job for two years. Enforcing the non-compete as requested by PAI would work an incredible hardship on me. While PAI cavalierly asserts that I could get a job with VISA, MasterCard or a bank, those jobs, at my level of experience, are not routinely available or widely disseminated to the public even if available. Moreover, VISA is located in San Francisco and one of my reasons for accepting Cynergy's offer is that it is located in New York where the rest of my family lives and where I was raised.

Further Affiant sayeth not.

I declare under penalty of perjury the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: October 15, 2007

Manuel Ferreira

3

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Index No : 07 CIV 8685 (BSJ)

PAYMENT ALLIANCE INTERNATIONAL, INC ,

        Plaintiff,

      -  against –

MANUEL FERREIRA,

        Defendant.

## AFFIDAVIT OF ANDRES ORDONEZ

I, Andres Ordonez, being first duly sworn, depose and say that I have personal knowledge of the matters set forth herein and, if sworn as a witness, I would be competent to testify as follows:

1.    I am the Chief Information Officer of Cynergy Data ("Cynergy"). I have been Chief Information Officer for the last 5 years.

2.    In that capacity, I am responsible for, and knowledgeable about, Cynergy's software applications, including, in particular, the VIMAS system which Cynergy has used since I have been at Cynergy

3    I have read the description that Plaintiff Payment Alliance International ("PAI") provided of its Colt software system in paragraphs 24 – 32 of its Verified Complaint.

4.    The VIMAS system already does everything which PAI says the Colt system will do.

5.    In particular, the VIMAS system already automatically interfaces with credit bureaus and processing systems. The VIMAS system already eliminates the need for manual verification of data.

6.    In fact, almost 90% of merchant applications are submitted to Cynergy electronically and approvals of merchant applications submitted electronically occur at the top of each and every hour. The balance of the merchant applications are submitted in paper format because the submitter is not yet able to submit them electronically. Those applications take longer to process and require manual review. But, the delay has nothing to do with the software system utilized by Cynergy, but rather, with the capabilities of the submitter.

7.    In fact, the VIMAS system was completely automated in these regards four or more years ago. As a result, while the programming to accomplish these tasks can take some time, there is nothing new or surprising or certainly nothing constituting a "trade secret" about the processes the Colt system is described as performing.

8.    The VIMAS system in fact does far more than merchant boarding. It also is Cynergy's system for customer service, risk management, collections, data entry and residual reporting, among other functions. Cynergy is very pleased with how the VIMAS system performs, including its performance in the merchant boarding process, and is not considering changing it or migrating away from it.

9.    Moreover, the VIMAS program is specifically designed to interface with Cynergy's front-end and back-end processors, Paymentech and TSYS. I understand that PAI uses different front-end and back-end processors and also a different merchant bank. Cynergy would have no use for the Colt system for this reason too.

2

10    In short, there is nothing novel about the Colt system as described in PAI's

Verified Complaint, Cynergy's VIMAS system already accomplishes the same automated tasks,

the VIMAS system is working exceptionally well and performs far more functions than simply

merchant boarding and so Cynergy has no interest in, or reason to, "misappropriate" the Colt

system or any of the processes which the Colt system is claimed to perform.

Further Affiant sayeth not.

I declare under penalty of perjury the foregoing is true and correct to the best of my

knowledge, information and belief.

DATE: October 15, 2007                                   Andres Ordonez

3