# EXHIBIT B

Execution Copy

## CONTRIBUTION AGREEMENT

This CONTRIBUTION AGREEMENT (this "Agreement") is made as of September 20, 2005, by and among EDR Acquisition, Inc., a Delaware corporation (the "Company") and each of the other parties who have executed a signature page hereto (each a "Rollover Stockholder" and together the "Rollover Stockholders"). Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Merger Agreement (as defined below).

WHEREAS, pursuant to the terms and conditions of this Agreement, the Rollover Stockholders desire to contribute shares of capital stock of EDR (the "Rollover Shares") in exchange for newly issued shares of Class A Common Stock of the Company (the "Class A Stock"), as more fully described herein.

NOW, THEREFORE, in consideration of the premises and the mutual promises herein made, and in consideration of the representations, warranties, and covenants herein contained, the parties hereto agree as follows:

1. **Contribution to the Company.** Each Rollover Stockholder agrees to contribute and deliver to the Company certificates representing the Rollover Shares owned by such Rollover Stockholder, as specified on Schedule 1 attached hereto, endorsed in blank or accompanied by duly executed stock powers, and in exchange therefore, the Company agrees to issue and deliver to each Rollover Stockholder, certificates representing the number of shares of Class A Stock as specified for each such Rollover Stockholder on Schedule 1 attached hereto. The Rollover Stockholders hereby request the Company to issue all of such shares of Class A Stock in the name of the Rollover Stockholders as set forth on Schedule 1.

2. **Tax Reporting.** The parties hereto intend that the transactions described in Section 1 together with the purchase of shares of the Company by Payment Alliance Holdings, LLC on or about the date hereof be characterized in the aggregate as an exchange under Section 351 of the Internal Revenue Code of 1986, as amended, and agree not to take an inconsistent position on any return or other document filed with any tax authority except as may be required by applicable law.

3. **Representations and Warranties of Rollover Stockholders.**

   (a) **Title and Ownership of the Rollover Shares, etc.** Each Rollover Stockholder is the lawful record and beneficial owner of the Rollover Shares set forth opposite its name on Schedule 1 hereto and has good and valid title to such Rollover Shares. The Rollover Shares owned by such Rollover Stockholder are free and clear of any liens, restrictions, claims, charges, pledges, security interests, options, rights of first offer, rights of first refusal or other encumbrances of any nature whatsoever (collectively, "Liens"), with no defects of title whatsoever. Each Rollover Stockholder has the exclusive right, power and authority to transfer the Rollover Shares owned by it. There are no proxies, voting trusts or voting agreements with respect to the voting of such Rollover Stockholder's Rollover Shares. Upon transfer of the Rollover Shares owned by such Rollover Stockholder to the Company in accordance with the

terms and conditions of this Agreement, the Company will have good and valid title to such Rollover Shares, free and clear of any Lien.

(b) <u>Authorization of Transaction</u>. Each Rollover Stockholder has the requisite power and authority to execute and deliver this Agreement and to perform its obligations hereunder. This Agreement constitutes the valid and legally binding obligation of such Rollover Stockholder, enforceable in accordance with its terms and conditions. Each Rollover Stockholder, to the best knowledge of such Rollover Stockholder, is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of any government or governmental agency in order to consummate the transactions contemplated by this Agreement.

(c) <u>Noncontravention</u>. Neither the execution and the delivery of this Agreement, nor the consummation of the transactions contemplated hereby, will (a) violate, conflict with, result in a breach of any provision of, constitute a default (or an event that, with notice or lapse of time or both, would constitute a default) under, result in the termination of, accelerate the performance required by, or result in a right of termination, cancellation or acceleration, the loss of a material right or benefit, or the creation of any Lien upon such Rollover Stockholder's Rollover Shares, or (b) violate any constitution, statute, regulation, rule, injunction, judgment, order, decree, ruling, charge, or other restriction of any government, governmental agency, or court to which any such Rollover Stockholder is subject.

(d) <u>Brokers' Fees</u>. No Rollover Stockholder has any liability or obligation to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement for which the Company could become liable or obligated.

(e) <u>Investment</u>. Each Rollover Stockholder is acquiring the Class A Stock for its own account and is not acquiring the Class A Stock with a view to, or for sale in connection with, any distribution thereof within the meaning of the Securities Act of 1933, as amended (the "<u>Act</u>"). Each Rollover Stockholder is an "accredited investor" as defined under rule 501 promulgated under the Act.

(f) <u>Sophistication of Rollover Stockholder</u>. Each Rollover Stockholder is sophisticated in financial matters, is able to evaluate the risks and benefits of the investment in the Class A Stock, and has determined that such investment in the Class A Stock is suitable for such Rollover Stockholder, based upon its financial situation and needs, as well as its other securities holdings.

(g) <u>Economic Risk</u>. Each Rollover Stockholder is able to bear the economic risk of its investment in the Class A Stock for an indefinite period of time and such Rollover Stockholder understands that the Class A Stock have not been registered under the Act, and cannot be sold unless subsequently registered under the Act or unless an exemption from such registration is available. Each Rollover Stockholder acknowledges that each of the Class A Stock will be subject to the provisions of a stockholders agreement by and between the Rollover Stockholders, the Company and other holders signatory thereto dated of even date herewith (the "<u>Operating Agreement</u>").

(h)   Information.  Each Rollover Stockholder has had an opportunity to ask questions and receive answers concerning the terms and conditions of the offering of the Class A Stock and has had full access to such other information concerning the Company as it has requested.  Each Rollover Stockholder has reviewed, or has had an opportunity to review, the Certificate of Incorporation of the Company and the Stockholders Agreement.

4.   Post-Closing Covenants.  The Company and the Rollover Stockholders agree as follows with respect to the period following the consummation of the transactions described herein.

(a)   Further Assurances.  Each party to this Agreement will take such further action (including the execution and delivery of such further instruments and documents) as is reasonably necessary to carry out the purpose of this Agreement as any other party hereto may reasonably request, all at the sole cost and expense of such requesting party.

(b)   Legends.  Each certificate of the Class A Stock issued under this Agreement will be imprinted with the following legend:

"THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), AND MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR AN EXEMPTION FROM REGISTRATION THEREUNDER."

5.   Release.

(a)   In consideration of the Class A Stock issued to the Rollover Stockholders, each Rollover Stockholder hereby agrees that, effective upon receipt of such Class A Stock, such Rollover Stockholder generally releases and discharges the Company, EDR and any of their subsidiaries and each of their affiliates and respective subsidiaries, each of their respective present or former shareholders, members, directors, officers, employees and agents, and any purchaser of all or substantially all of the outstanding capital stock of any of the Company's subsidiaries or any of the subsidiaries or affiliates of each of the foregoing and their respective successors and assigns (each a "Released Party"), of and from any and all commitments, indebtedness, suits, demands, obligations and liabilities of every kind and nature, including claims and causes of action both in law and in equity (collectively, "Claims"), which each Rollover Stockholder ever had, now has, or (to the extent arising from or in connection with any act, omission or state of facts taken or existing on or prior to the date hereof) may have after the date hereof, against any Released Party with respect to the Rollover Shares or any other equity compensation arising from such Rollover Stockholder's employment by EDR or other rights with respect to the capital stock of EDR other than Claims with respect to payments to be made pursuant to this Agreement.

6. <u>Indemnification</u>.

(a) <u>Survival of Rollover Stockholders' Representations and Warranties</u>. The representations and warranties of the Rollover Stockholders set forth in <u>Section 3</u> shall survive indefinitely.

(b) <u>Indemnification by Rollover Stockholders</u>. The Company and its Affiliates and their respective shareholders, partners, members, officers, directors, employees, agents, representatives, successors and permitted assigns (collectively, the "<u>Company Indemnified Parties</u>"), shall be indemnified and held harmless by the Rollover Stockholders, severally and not jointly, from and against any and all losses arising out of or resulting from:

(i) any breach by such Rollover Stockholder of any representation or warranty made by such Rollover Stockholder in <u>Section 3</u>; and

(ii) the failure by such Rollover Stockholder to perform any covenant, agreement or obligation of such Rollover Stockholder set forth in this Agreement.

(c) Any payment to be made to any Company Indemnified Party pursuant to this <u>Section 5</u> shall be effected by wire transfer of immediately available funds from the applicable Rollover Stockholder, to an account designated by such Company Indemnified Party within ten business days after the determination of the amount due; *provided*, that such Company Indemnified Party may, in lieu of requiring such payment in immediately available funds, elect, within five business days after the determination of the amount due, in a written notice to such Rollover Stockholder (the "<u>Indemnity Election Notice</u>"), to either (i) setoff any amount due from such Rollover Stockholder against future payments due to such Rollover Stockholder from the Company or its direct or indirect subsidiaries, or (ii) solely with respect to a breach of <u>Section 3(a)</u>, receive that number of Class A Stock owned by such Rollover Stockholder (the "<u>Surrendered Shares</u>") which, when multiplied by the original cost for such Class A Stock, is equal to the amount due. If a Company Indemnified Party elects to receive Surrendered Shares to satisfy any amount due to such Company Indemnified Party, the Rollover Stockholder shall deliver to the Company (1) such Rollover Stockholder's original unit certificate and (2) a transfer power executed in blank, within five business days after its receipt of the Indemnity Election Notice. The Company shall, in the event that an Rollover Stockholder surrenders a stock certificate for Class A Stock in excess of the Surrendered Shares, execute and deliver a new certificate of like kind for that number of excess Class A Stock.

7. <u>Miscellaneous</u>.

(a) <u>Press Releases and Public Announcements</u>. No party hereto shall issue any press release or make any public announcement relating to the subject matter of this Agreement without the prior written approval of the Company; *provided*, that any party hereto may make any public disclosure it believes in good faith is required by applicable law (in which case the disclosing party will use its commercially reasonable efforts to advise the other parties hereto prior to making the disclosure).

(b) <u>Succession and Assignment</u>. This Agreement shall be binding upon and inure to the benefit of the parties named herein and their respective successors and permitted

assigns. No party hereto may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other parties.

(c) Counterparts. This Agreement may be executed in one or more counterparts (including by facsimile), each of which shall be deemed an original but all of which together will constitute one and the same instrument.

(d) Headings. The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

(e) Governing Law. All questions concerning the construction, validity, and interpretation of this Agreement shall be governed by and construed in accordance with the domestic laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York.

(f) Amendments and Waivers. This Agreement may be amended, or any provision of this Agreement may be waived upon a written approval, executed by the parties hereto. No course of dealing between or among the parties hereto shall be deemed effective to modify, amend, or discharge any part of this Agreement or any rights or obligations of any such party or such holder under or by reason of this Agreement.

(g) Severability. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

(h) Construction. The parties hereto have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties hereto, and no presumption or burden of proof shall arise favoring or disfavoring any party hereto by virtue of the authorship of any of the provisions of this Agreement.

(i) WAIVER OF JURY TRIAL. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTON OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHT, POWER, OR REMEDY UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE CONTEMPLATED TRANSACTIONS HEREUNDER OR IN CONNECTION WITH ANY AMENDMENT, INSTRUMENT, DOCUMENT, OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH OR ARISING FROM ANY RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED BY THIS AGREEMENT, AND AGREE THAT ANY SUCH ACTION SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. THE TERMS AND PROVISIONS OF THIS SECTION 7(i) CONSTITUTE A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING INTO THIS AGREEMENT.

\* \* \* \*

IN WITNESS WHEREOF, the parties hereto have executed this Contribution Agreement as of the date first above written.

_____
Manny Ferreira

K&E 10704493.