# EXHBIIT B
# (CONTINUED)

party may reasonably request, all at the sole cost and expense of the requesting party (unless the requesting party is entitled to indemnification therefor under Article VIII below).

### 7.4    Litigation Support

In the event and for so long as any Party actively is contesting or defending against any action, suit, proceeding, hearing, investigation, charge, complaint, claim, or demand in connection with (a) any transaction contemplated under this Agreement or (b any fact, situation, circumstance, status, condition, activity, practice, plan, occurrence, event, incident, action, failure to act, or transaction on or prior to the Closing Date involving the Company or any of its Subsidiaries, each of the Parent, Newco, the Company, the Principal Stockholders and the Management Selling Stockholders will cooperate with him, her, or it and his, her, or its counsel in the contest or defense, make available his, her, or its personnel, and provide such testimony and access to his, her, or its books and records as shall be necessary in connection with the contest or defense, all at the sole cost and expense of the contesting or defending party (unless the contesting or defending party is entitled to indemnification therefor under Article VIII below).

### 7.5    Customer Relations, Etc.

None of the Company or any of its Subsidiaries or any of their respective Representatives or any of the Management Selling Stockholders will take any action that is designed or intended to have the effect of discouraging any lessor, licensor, customer, supplier, or other business associate of the Company or any of its Subsidiaries from maintaining the same business relationships with the Company and its Subsidiaries after the Closing Date as it maintained with the Company and its Subsidiaries prior to the Closing Date. Each of the Management Stockholders will refer all customer inquiries relating to the business of the Company and its Subsidiaries to the Parent from and after the Closing.

### 7.6    Confidential Information

Each of the Principal Stockholders and the Management Selling Stockholders and the Management Selling Stockholders' Affiliates and Representatives will treat and hold as such all Confidential Information, refrain from using any Confidential Information except in connection with this Agreement, and deliver promptly to Parent or destroy (other than such Confidential Information that such person are required to keep by applicable law), at the request and option of Parent, all tangible embodiments (and all copies) of the Confidential Information that are in his, her, or its possession. In the event that any Principal Stockholder, Management Selling Stockholder or an Affiliate or Representative of a Management Selling Stockholder is requested or required pursuant to written or oral question or request for information or documents in any legal proceeding, interrogatory, subpoena, civil investigative demand, or similar process to disclose any Confidential Information, such Person will notify Parent promptly of the request or requirement so that Parent may seek an appropriate protective order or waive compliance with the provisions of this Section 7.6. If, in the absence of a protective order or the receipt of a waiver hereunder, any such Person is, on the advice of counsel, compelled to disclose any Confidential Information, such Person may disclose the Confidential Information; provided, however, that the disclosing Person shall use his, her, or its reasonable best efforts to obtain, at the request of Parent, an order or other assurance that confidential treatment will be

accorded to such portion of the Confidential Information required to be disclosed as Parent shall designate. The foregoing provisions shall not apply to any Confidential Information that is generally available to the public immediately prior to the time of disclosure unless such Confidential Information is so available due to the actions of a Principal Stockholder, Management Selling Stockholder or an Affiliate or Representative of a Management Selling Stockholder. For the purposes hereof, **"Confidential Information"** means any information concerning the businesses and affairs of the Company and its Subsidiaries that is not already generally available to the public.

7.7     **Non-Compete**.

For a period of two years from and after the Closing Date, none of the Management Selling Stockholders, or their Affiliates or Representatives will engage directly or indirectly in any business that the Company or any of its Subsidiaries conducts as of the Closing Date; provided, however, that no owner of less than 1% of the outstanding stock of any publicly traded corporation shall be deemed to engage solely by reason thereof in its business. If the final judgment of a court of competent jurisdiction declares that any term or provision of this Section 7.7 is invalid or unenforceable, each of the Parent, Newco, the Company and the Management Selling Stockholders agrees that the court making the determination of invalidity or unenforceability shall have the power to reduce the scope, duration, or area of the term or provision, to delete specific words or phrases, or to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Agreement shall be enforceable as so modified after the expiration of the time within which the judgment may be appealed.

## ARTICLE VIII
## SURVIVAL OF AGREEMENTS; INDEMNIFICATION

8.1     **Survival of Representations and Warranties**.

The representations and warranties contained in this Agreement shall survive the Closing for a period of one (1) year after the Closing Date (the "**Survival Period**"), except for the representation and warranties contained in Sections 3.1, 3.2, 3.3, 3.4, and 3.9 and 4.1, 4.2 and 4.3 shall survive until thirty (30) days after the last applicable statute of limitations (the "**Excluded Warranties**"). No claim for indemnification hereunder for breach of any representations or warranties may be made after the expiration of the survival period applicable to such claims; provided, however, that any claim for indemnification for which written notice has been given in good faith in reasonable detail within the prescribed period may be prosecuted to conclusion notwithstanding the subsequent expiration of such period.

8.2     **Indemnification of Company Indemnified Parties**.

Subject to the other provisions of this Article VIII, from and after the Closing Date, each Company Indemnified Party shall be indemnified, held harmless and reimbursed by the Parent and Newco, from and for any and all Damages suffered or incurred by such Company Indemnified Party resulting from or arising out of: (a) the inaccuracy or breach by the Parent or Newco of any of the Parent's or Newco's representations or warranties set forth in this

Agreement or in any document or agreement delivered by the Parent or Newco pursuant to this Agreement; (b) any failure by the Parent or Newco to carry out, perform, satisfy or discharge any covenants, agreements, undertakings, or obligations to be performed by the Parent or Newco pursuant to the terms of this Agreement or any of the documents or agreements delivered by the Parent or Newco pursuant to this Agreement; or (c) the conduct of the business of the Surviving Corporation and its Subsidiaries after the Closing Date. Each Company Indemnified Party shall take all commercially reasonable steps to mitigate any Damages upon becoming aware of any event which would reasonably be expected to, or does, give rise thereto, including incurring costs only to the minimum extent necessary to remedy the breach which gives rise to the Damages.

### 8.3     Indemnification of Parent Indemnified Parties.

Subject to the other provisions of this Article VIII, from and after the Closing Date, each Parent Indemnified Party shall be indemnified, held harmless and reimbursed from and for any and all Damages suffered or incurred by such Parent Indemnified Party resulting from or arising out of: (i) the inaccuracy or breach by the Company of any of the Company's representations or warranties set forth in this Agreement or in any document or agreement delivered by the Company pursuant to this Agreement (other than the Employment Agreements referred to in Section 6.2(f)); or (ii) any failure by the Company to carry out, perform, satisfy or discharge any covenants, agreements, undertakings or obligations to be performed by the Company pursuant to the terms of this Agreement or any of the documents or agreements delivered by the Company pursuant to this Agreement, or (iii) any acts committed prior to the Closing Date that constitute willful misconduct or fraud by a Principal Stockholder. The Parent and Newco shall take, and shall cause each other Parent Indemnified Party to take, all commercially reasonable steps to mitigate any Damages upon becoming aware of any event which would reasonably be expected to, or does, give rise thereto, including incurring costs only to the minimum extent necessary to remedy the breach which gives rise to the Damages

### 8.4     Third Party Claims.

The respective obligations and liabilities of the Parent and Newco on the one hand, and the Stockholders' Representative (acting on behalf of the Stockholders), on the other hand (the "**Indemnifying Party**"), to the other (the "**party to be indemnified**") under Sections 8.2 and 8.3, respectively, with respect to claims resulting from the assertion of liability by third parties shall be subject to the following terms and conditions:

(a)     Within fifteen (15) days (or such earlier time as might be required to avoid prejudicing the Indemnifying Party's position) after receipt of notice of commencement of any action evidenced by service of process or other legal pleading, or with reasonable promptness after the assertion in writing of any claim by a third party, the party to be indemnified shall give the Indemnifying Party written notice thereof together with a copy of such claim, process or other legal pleading; provided, however, that the failure to give notice shall not affect the right of the party to be indemnified to indemnification hereunder except to the extent that such failure prejudices the ability of the Indemnifying Party to defend any claim  The Indemnifying Party shall have the right to undertake the defense thereof by representatives of its own choosing and at its own expense; provided, however, that the party to be indemnified may participate in the defense with counsel of its own choice and at its own expense

(b) In the event that the Indemnifying Party, by the thirtieth (30th) day after receipt of notice of any such claim (or, if earlier, by the tenth (10th) day preceding the day on which an answer or other pleading must be served in order to prevent judgment by default in favor of the Person asserting such claim), does not elect to defend against such claim, the party to be indemnified will (upon further written notice to the Indemnifying Party) have the right to undertake the defense, compromise or settlement of such claim on behalf of and for the account and risk of the Indemnifying Party and at the Indemnifying Party's expense; provided, however, that the Indemnifying Party may participate in the defense with counsel of its own choice and at its own expense. The party to be indemnified shall not settle or compromise such claim without the consent of the Indemnifying Party, which consent will not be unreasonably withheld.

(c) Anything in this Section 8.4 to the contrary notwithstanding, the Indemnifying Party shall not settle any claim without the consent of the party to be indemnified unless such settlement (i) involves only the payment of money, (ii) does not involve an injunction or other equitable relief, and (iii) provides for the claimant to provide to the party to be indemnified a release from all liability in respect of such claim. If the settlement of the claim does not satisfy all of the conditions in the preceding sentence, the Indemnifying Party shall not settle the claim without the prior consent of the Party to be indemnified, which consent will not be unreasonably withheld. At any time after the commencement of the defense of any third party claim, if such third party claim can be settled or compromised for a sum certain, the Indemnifying Party may request the party to be indemnified to agree in writing to the payment, settlement or compromise by the Indemnifying Party of the asserted third party claim for such sum, whereupon such action shall be taken unless the party to be indemnified determines that the contest should be continued, and so notifies the Indemnifying Party in writing within fifteen (15) days of the receipt of such request from the Indemnifying Party. If the party to be indemnified determines that the contest should be continued, the Indemnifying Party shall be liable hereunder only to the extent of the amount that the other party to the contested third party claim had agreed to accept in payment, settlement or compromise as of the time the Indemnifying Party made its request therefor to the party to be indemnified.

(d) Each of the Parent, Newco, the Company and the Principal Stockholders shall cooperate in the defense or prosecution of any third party claim, with such cooperation to include (i) the retention and the provision of the Indemnifying Party records and information that are reasonably relevant to such third party claim, and (ii) the making available of employees on a mutually convenient basis for providing additional information and explanation of any material provided hereunder.

### 8.5 Limitations on Indemnification.

Notwithstanding anything else contained herein to the contrary, no indemnification payable by an Indemnifying Party in this Article VIII shall be required from an Indemnifying Party (a) for any individual item where the Damages related thereto are less than $10,000 and (b) in respect of each individual item where the Damages related thereto exceed the amount set out in clause (a) above, until the aggregate amount of Damages incurred by a party to be indemnified exceeds $250,000 (the "**Deductible**"). In the event that a party to be Indemnified's Damages exceed the Deductible, the Indemnifying Party's obligations will include all Damages that were included in the calculation of the amount of Damages in (b) above. In no

event shall the aggregate liability under this Article VIII (i) for which the Parent Indemnified Parties may seek indemnification for all claims hereunder exceed an amount equal to the amount of the funds then held in the Escrow Account, and (ii) for which the Company Indemnified Parties may seek indemnification for all claims hereunder exceed an amount equal to the funds then held in the Escrow Account; provided, however, that, with respect to any Indemnifiable Damages suffered or incurred by a Parent Indemnified Party resulting from or arising out of a claim for breach of an Excluded Warranty each of the Principal Stockholders and the Management Selling Stockholders shall be liable, jointly and severally, for all such Damages in an aggregate amount: (i) with respect to the Principal Stockholders an amount up to the Purchase Price such Principal Stockholder receives or is entitled to receive pursuant to this Agreement, provided that in no event shall any Principal Stockholder be liable for any Indemnifiable Damages hereunder until the Escrow Funds have been used exhausted; and (ii) with respect to the Management Selling Stockholders, an amount up to the amount of Indemnifiable Damages suffered.

### 8.6   Calculation of Amounts; Other Limitations.

(a) The amounts for which an Indemnifying Party shall be liable under this Article VIII shall be net of any insurance proceeds received by a party to be indemnified in respect of such party's Damages. In no event shall Damages under this Article VIII include any consequential, lost profits or punitive Damages

(b) Without prejudice to the rights of any Parent Indemnified Party to be indemnified, held harmless and reimbursed when and as required by this Article VIII, if any Damages sustained by a Parent Indemnified Party are covered by an insurance policy, the Parent Indemnified Party shall use commercially reasonable efforts to collect such insurance. If the Parent Indemnified Party receives such insurance prior to being indemnified, held harmless and reimbursed with respect to such Damages, the payment with respect to such Damages shall be reduced (but not below zero) by the amount of such insurance proceeds or indemnity payments to the extent related to such Damages, net of attorney's fees and other expenses incurred in connection with such recovery. If the Parent Indemnified Party receives such insurance proceeds after being indemnified and held harmless with respect to such Damages, the Parent Indemnified Party shall pay promptly to the Escrow Fund (up to a maximum of the total amount paid from the Escrow Fund to the Parent Indemnified Party in respect of such Damages) the amount of such insurance proceeds or indemnity payments to the extent related to such Damages, net of attorney's fees and other expenses incurred in connection with such recovery.

### 8.7   Exclusive Remedy.

(a) Absent fraud, after the Closing occurs this Article VIII, including the limitations set forth herein, shall provide the sole and exclusive remedy for any and all claims sustained or incurred by a party hereto in connection with the transactions contemplated by this Agreement and no claim shall be brought by any Parent Indemnified Party other than pursuant to the terms of this Agreement.

(b) Subsequent to the Closing Date, Parent, Newco and Company may seek to recover damages from a Principal Stockholder for (i) the breach of the covenants of a Principal Stockholder contained in Sections 7.3, 7.4, and 7.6, (ii) acts committed prior to the Closing Date

by a Principal Stockholder that constitute fraud, and (iii) acts committed prior to the Closing Date by a Principal Stockholder that constitute willful misconduct (for the purposes of this paragraph 8.7(b) as defined herein) In no event shall any Principal Stockholder be liable for the breaches or acts of any other Principal Stockholder, unless that Principal Stockholder was directed to commit the breaches or acts by the first Principal Stockholder. All such claims under clauses (i) and (ii) may be brought until thirty (30) days after the last applicable statute of limitations applicable thereto, and all such claims under clause (iii) must be brought prior to the second anniversary date of the Closing Date. The aggregate maximum liability of any Principal Stockholder under this Section 8.7(b) is as follows: (A) with respect to any damages suffered or incurred by Parent, Newco or the Company resulting from or arising out of a claim for a breach of Sections 7.3, 7.4 and 7.6, by or at the direction of such Principal Stockholder shall not be in excess of the portion of the Purchase Price received or entitled to be received by such Principal Stockholder pursuant to this Agreement; (B) with respect to any damages suffered or incurred by Parent, Newco or the Company resulting from or arising out of a claim for willful misconduct on the part or at the direction of any Principal Stockholder shall not be in excess of the lesser of $4,000,000 or the actual portion of the Purchase Price received or entitled to be received by such Principal Stockholder pursuant to this Agreement; and (C) with respect to any damages suffered or incurred by Parent, Newco or the company resulting from or arising out of a claim for fraud on the part or at the direction of any Principal Stockholder shall not be in excess of the actual portion of the Purchase Price received or entitled to be received by such Principal Stockholder pursuant to this Agreement. The aggregate maximum liability of any Principal Stockholder for all claims under this Section 8.7(b) shall in no event exceed the actual portion of the Purchase Price received or entitled to be received by such Principal Stockholder pursuant to this Agreement. For purposes of this paragraph 8.7(b) only hereof, damages from "willful misconduct" shall not be deemed to have been suffered or incurred by any of Parent, Newco or the Company unless such damages were caused by an act committed intentionally by or at the direction of a Principal Stockholder, knowingly and with a purpose to cause damage to the Company, as distinguished from an act committed negligently or recklessly.

(c) Subsequent to the Closing Date, Parent, Newco and Company may seek to recover damages, in an amount up to the amount of Indemnifiable Damages suffered, from a Management Selling Stockholder for (i) the breach of the covenants of a Management Selling Stockholder contained in Sections 7.3, 7.4, 7.5, 7.6 and 7.7; (ii) acts committed prior to the Closing Date by or at the direction of a Management Selling Stockholder that constitute fraud and (iii) acts committed prior to the Closing Date by or at the direction of a Management Selling Stockholder that constitute willful misconduct. In the case of a claim for fraud, in no event shall any Management Selling Stockholder be liable for the breaches of acts of any other Management Selling Stockholder unless that Management Selling Stockholder was directed to commit the breaches or acts by the first Management Selling Stockholder. All such claims under clauses (i), (ii) and (iii) may be brought until thirty (30) days after the last applicable statue of limitations applicable thereto.

## ARTICLE IX
## MISCELLANEOUS

**9.1** **Notices**

All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed given if delivered personally, telecopied (with confirmation), mailed by certified mail (postage prepaid, return receipt requested), or delivered by national courier service to the Parties at the following addresses (or at such other address for a party as shall be specified by like notice) and shall be effective upon receipt (or upon the next succeeding Business Day if received after 5:00 p.m. local time on a Business Day or if received on a Saturday, Sunday or United States holiday):

(a)   If to the Company :

_____
_____
Telecopier: _____
Attention:_____

With a copy to:

Jenkens & Gilchrist, a Professional Corporation
1445 Ross Ave., Suite 3700
Dallas, Texas 75202
Telecopier: (214) 855-4300
Attention: Charles E. Greef, Esq.
         Gregory J. Schmitt, Esq

(b)   If to the Parent or Newco:

_____
_____
Telecopier:_____
Attention: James C. Comis III
         Brad Esson

With a copy to:

Kirkland & Ellis LLP
153 East 53rd St.
New York, New York 10022
Telecopier: (212) 446-6400
Attention: Adrian van Schie, Esq.

### 9.2  Headings; Internal References

The Articles and Section headings contained in this Agreement are for reference purposes only, are not part of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement.

### 9.3  Severability

If any term or other provision of this Agreement is held by a court of competent jurisdiction to be invalid, illegal or incapable of being enforced by any rule of Law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect. Upon such a determination the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner in order that the transactions contemplated hereby may be consummated as originally contemplated to the fullest extent possible.

### 9.4  Interpretation

As used in this Agreement, (a) "including" means "including, without limitation", and (b) a dollar amounts are expressed in United States funds. The Parties hereto have participated jointly in the negotiation and drafting of this Agreement. In the event any ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by all Parties hereto, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision of this Agreement.

### 9.5  Entire Agreement

This Agreement, the Confidentiality Agreement, the Escrow Agreement and the other agreements entered into in connection with the Merger constitute the entire agreement of the Parties and supersede all prior agreements and undertakings, both written and oral, between the Parties, or any of them, with respect to the subject matter hereof are not intended to confer upon any other Person any rights or remedies hereunder.

### 9.6  Assignment

This Agreement and the rights and obligations of the Parties hereunder may not be transferred, assigned, pledged or hypothecated by any party without the prior written consent of the other Parties hereto. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and permitted assigns.

### 9.7  Governing Law

This Agreement shall be governed by, and construed in accordance with, the Laws of the State of Delaware, regardless of the Laws that might otherwise govern under applicable principles of conflicts of Law.

### 9.8  Counterparts

This Agreement may be executed in one or more counterparts, and by the different Parties in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.

### 9.9    Fees and Expenses.

All fees and expenses incurred by the Company in connection with this Agreement, the other agreements contemplated hereby and the Merger shall be paid by the Company prior to the consummation of the transactions contemplated hereby. All fees and expenses incurred by the Parent or Newco in connection with this Agreement, the other agreements contemplated hereby and the Merger shall be paid by the Parent or Newco.

### 9.10    Amendment.

This Agreement may not be amended, or any of its terms, covenants, representations, warranties or conditions waived, except by the agreement in writing of the Parties and in accordance with their applicable charter documents and applicable Law.

### 9.11    Consent to Jurisdiction.

The Parent, Newco, the Company, the Principal Stockholders, the Management Selling Stockholders and the Stockholders hereto each hereby irrevocably submit to the exclusive jurisdiction of any state or federal court sitting in the District of Delaware for the purposes of any suit, action or other proceeding arising out of or based upon this Agreement or the subject matter hereto brought by any other party hereto. Each party also agrees not to bring any action or proceeding arising out of or relating to this Agreement in any other court. Each party hereto, to the extent permitted by applicable Law, hereby waives and agrees not to assert, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding brought in such courts, any claim that it is not subject personally to the jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by such court. Any party may make service on any other party by sending or delivering a copy of the process to the party to be served at the address and in the manner provided for the giving of notices in Section 9.1 above. Nothing in this Section 9.11, however, shall affect the right of any party to serve legal process in any other manner permitted by law or at equity. Each party agrees that a final judgment in any action or proceeding so brought shall be conclusive and may be enforced by suit on the judgment or in any other manner provided by law or at equity.

9.12   **Waiver of Jury Trial.**   TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE PARENT, NEWCO, THE COMPANY, THE PRINCIPAL STOCKHOLDERS, THE MANAGEMENT SELLING STOCKHOLDERS AND THE STOCKHOLDERS HEREBY IRREVOCABLY AND EXPRESSLY WAIVE ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE OTHER DOCUMENTS AND AGREEMENTS DELIVERED IN CONNECTION HEREWITH, THE TRANSACTION OR THE ACTIONS OF THE PARENT, NEWCO, THE COMPANY THE PRINCIPAL STOCKHOLDERS, THE MANAGEMENT SELLING STOCKHOLDERS OR THE STOCKHOLDERS IN THE NEGOTIATION, ADMINISTRATION, OR ENFORCEMENT HEREOF OR THEREOF.

9.13   **Stockholders' Representative.**

(a) To administer efficiently the rights and obligations of the Stockholders under this Agreement, the Stockholders have designated and appointed _____ as the Stockholders' Representative (the "**Stockholders' Representative**"), to serve as the Stockholders' agent and attorney in fact for the limited purposes set forth in this Agreement.

(b) _____ shall serve as the Stockholders' Representative until such Person resigns or is otherwise unable or unwilling to serve. If the Stockholders' Representative shall resign or otherwise become unable or unwilling to serve, then a successor representative shall be appointed to fill such vacancy, shall provide prompt written notice to the Parent of such change and such substituted representative shall then be deemed to be the sole Stockholders' Representative for all purposes of this Agreement. Any substitute Stockholders' Representative shall execute an acceptance of such appointment if requested to do so by Parent.

(c) The duties of the Stockholders' Representative shall be only those which are specifically provided in this Agreement and the agreement appointing the Stockholders' Representative, and the Stockholders' Representative shall not be personally liable for actions or decisions taken or made in good faith in managing or discharging his duties and responsibilities in accordance with the terms hereof and thereof.

**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the Company, the Parent and Newco have caused this Agreement to be duly executed as of the date first written above by duly authorized representatives.

**COMPANY:**

ELECTRONIC DATA RESOURCES, INC
By:_____
Name:_____
Title:_____


**NEWCO:**

[_____]

By:_____
Name:_____
Title:_____


**PARENT:**

[PAYMENT ALLIANCE HOLDINGS, LLC.]

By:_____
Name:_____
Title:_____


**PRINCIPAL STOCKHOLDERS:** (solely for purposes of Sections 7.3, 7.4 and 7.6, certain of the indemnification provisions contained in Article VIII, and Sections 9.10 and 9.11)


_____


_____


_____

_____

_____

_____

_____

_____

**MANAGEMENT STOCKHOLDERS:**

_____

_____

_____

_____

_____

_____

_____

**STOCKHOLDERS**

_____

_____

_____

_____

_____

_____

_____

_____

Exhibit A

Escrow Agreement

**Exhibit B**

**Opinion of Jenkins and Gilchrist**

# Exhibit C

## Opinion of Kirkland and Ellis

]