UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                              :
PAYMENT ALLIANCE INTERNATIONAL, INC.,:
                                              :
                         Plaintiff,           :
            v.                                :    07 Civ. 08685 (BSJ)
                                              :
MANUEL FERREIRA,                              :       **Order**
                                              :
                         Defendant.           :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

     Plaintiff, Payment Alliance ("PAI") brings this action to
enjoin defendant Manuel Ferreira ("Ferreira"), a former
executive employee at PAI, from commencing employment with
Cynergy Data, Inc ("Cynergy").  PAI alleges claims for breach of
contract, breach of the duty of good faith and fair dealing,
misappropriation of trade secrets, unfair competition, unjust
enrichment and breach of fiduciary duty.  These claims arise out
of an Employment Agreement signed between Ferreira and PAI and
PAI'S subsequent decision to resign from his employment at PAI
and work for Cynergy.

     Plaintiff initiated this action by way of an Order to Show
Cause on October 9, 2007.  The Court signed the Order to Show
Cause in substantially the form it was presented, including an
*ex parte* temporary restraining order ("TRO") substantively
similar to the preliminary injunction now requested.  Pursuant

1



to an agreement between the parties, this TRO has remained in
effect pending further decision by this Court.  The Court held a
conference with the parties on October 19, 2007 during which
Ferreira requested additional time to file a supplemental brief
with the Court.  The Court is now in receipt of Ferreira's
supplemental brief in opposition to Plaintiff PAI's Application
for a Preliminary Injunction, dated October 26, 2007 as well as
PAI's reply letter dated November 6, 2007.  Upon consideration
by the Court, Plaintiff's application for injunctive relief is
GRANTED.

BACKGROUND

PAI is a provider of electronic payment processing
services, primarily for point of sale terminals and ATMs. PAI's
software and systems are used by retail businesses to process,
organize and display information and to arrange for payment to
the merchants' accounts.

Ferreira's employment with PAI resulted from PAI's
acquisition of his former employer, Electronic Data Resources
("EDR") on September 21, 2005.  Ferreira worked at EDR as Senior
Vice President of Operations, reporting directly to the Chief
Operating Officer. (Compl. at ¶ 17).  Prior to and in
contemplation of the merger, Ferreira was asked to sign an
Executive Employment Agreement (the "Employment Agreement") with
EDR. (*See* Executive Employment Agreement, dated September 20,

2

2005).  In the Agreement, Ferreira contracted to refrain from competing against EDR or any related company and from soliciting its employees and customers following the termination of his employment.[1]  Ferreira signed the agreement and initialed each of the sections therein.  *Id.*  The rights and obligations of the employment agreement contract were transferred to PAI in the merger. *(See* Compl. at ¶ 24).  Thus, following the merger, Ferreira continued working for PAI under the terms and conditions set forth in the employment agreement.

In May, 2007 Ferreira was promoted by PAI to Senior Vice President of all bank card operations, receiving a salary increase and additional shares in PAI's stock plan. (Compl. at ¶ 26; Answer at ¶ 26).  PAI alleges that in this role, Ferreira worked closely with technical and information technology personnel who design, text and maintain PAI's electronic payment processing services ("EPP"). (Compl. at ¶¶ 27-28).  PAI further alleges that Ferreira was involved in the development of a

---

[1] Section 7 of the Employment Agreement reads in pertinent part: "Executive acknowledges that during his employment relationship with, or through his involvement as a member or stockholder of, any Related Company, Executive has and will become familiar with trade secrets and other Confidential Information concerning such Related Companies… and that Executive's services have been and will be of special, unique and extraordinary value to the foregoing entities.  Therefore, Executive agrees that during the Employment Period and for a period of: (i) two years after the Severance Term if the employment was terminated Without Good Reason or with Cause or (ii) one year thereafter if the employment was terminated with Good Reason or Without Cause or Disability;(the "Non-Compete Period"), he will not directly or indirectly own, manage, control, participate in, consult with, render services for, or in any other manner engage in any business, or as an investor in or lender to any business... which constitutes or is competitive with all or part of business of the Related Companies."

3

software application for PAI's EPP, known internally at PAI as "COLT." (*Id.* at ¶ 29). Specifically, PAI alleges that "Ferreira's involvement with this project included managing and directing the design of the Application and working closely with computer programmers and others." (*Id.* at ¶ 34). PAI claims that COLT streamlines the merchant application and electronic payment processes and will give PAI a significant advantage over its competitors. (*Id.* at ¶ 30-31).

On October 1, 2007, Ferreira voluntarily resigned his employment with PAI and accepted employment from Cynergy. PAI claims that Ferreira's resignation from PAI and subsequent employment with Cynergy comes at the moment that PAI is nearing completion of the COLT software. (Compl. at ¶ 4). It is undisputed that Cynergy is a direct competitor of PAI. PAI claims that "[p]relimiunary and permanent injunctive relief in accordance with Fed. R. Civ. P. 65 is required to stop and avoid the existing, imminent and irreparable harm caused and to be caused by Ferreira's breach of contract and to protect against the disclosure of PAI's trade secrets and other proprietary and confidential information to Cynergy Data." (Compl. at ¶ 5). Ferreira denies that he has possesses any confidential information and argues that PAI has not and cannot make the showing required for injunctive relief. (Def.'s Mem. at 2).

DISCUSSION

4

At a conference on October 19, 2007, the parties agreed to forgo the opportunity to present witness testimony and have the Court decide the preliminary injunction motion based on the written record before it.  In addition to its moving papers and verified complaint, Plaintiff has submitted affidavits from Gregory Sahrmann, the Chief Operating Officer of PAI and Dawn Murray, the architect of the COLT system.  Ferreira has submitted his own sworn statements in the form of two affidavits as well as an affidavit from Andres Ordonez, the Chief Information Officer of Cynergy.  Also before the Court are copies of the employment agreement at issue and documents relating to the merger of PAI and EDR.

### Preliminary Injunction Standard

"Because the purpose of a preliminary injunction is to prevent litigants from taking actions that they are otherwise legally entitled to take in advance of adjudication on the merits, they should be issued cautiously and in accordance with appropriate procedural safeguards." *Kanan, Corbin, Schupak & Aronow, Inc. v. FD Int'l, Ltd.*, 8 Misc.3d 412, 416, 797 N.Y.S.2d 883, 886-87 (N.Y. County Sup.Ct. 2005)(citing *Uniformed Firefighters Assoc. v. New York,* 79 N.Y.2d 236, (1992)); *see also Marietta Corp. v. Fairhurst*, 301 A.D.2d 734, 736 (3d Dept. 2003)(stating that a preliminary injunction is a "drastic remedy which is not routinely granted").  Thus, the burden is on the

5

party seeking preliminary injunctive relief to establish: "(1) irreparable harm, and (2) either (a) a likelihood of success on the merits, or (b) a balance of hardships tipping decidedly toward the party seeking the injunctive relief." *Covino v. Patriss*, 967 F.2d 73, 77 (2d Cir. 1992).

Irreparable Harm

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it were not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be granted." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985). Accordingly, the moving party must first establish a likelihood of irreparable injury before the other requirements for granting an injunction will be considered. *Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1999). To make this showing, a Plaintiff must demonstrate that absent a preliminary injunction he will suffer "an injury that is neither remote nor speculative, but actual and imminent," and one that cannot be redressed through a monetary award. *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).

In the present case, PAI has persuaded this Court that absent a preliminary injunction, it will suffer irreparable harm because Ferreira will disclose trade secret information in his new employment with a direct competitor. In reaching this

6

conclusion the Court has weighed the facts presented by the
parties and considered Ferreira's legal arguments.

First, Ferreira argues that PAI has not made the required
showing of irreparable harm to justify preliminary injunctive
relief because PAI has failed to demonstrate any actual
misappropriation by Ferreira.  While irreparable harm is
presumed where a trade secret has been misappropriated, evidence
of misappropriation is not a prerequisite to a finding of
irreparable harm.  Rather, "even where a trade secret has not
yet been disclosed, irreparable harm may be found based upon a
finding that trade secrets will inevitably be disclosed."  *Estee
Lauder Cos. v. Batra,* 430 F Supp 2d 158 (S.D.N.Y. 2006).
Ferreira argues that courts in New York disfavor reliance on
inevitable disclosure as a basis for establishing irreparable
harm absent evidence of actual misappropriation.  (*See* Def.'s
Supp. Mem at 10).  However, he cites to cases which examine the
use of inevitable disclosure "as a surrogate for an express
restrictive covenant not to compete." *See Marrietta Corp v.
Fairhurst,* 301 A.D.2d 735, 736 (N.Y.3d 2003)(stating that
reliance on inevitable disclosure to imply a restrictive
covenant against competition is "disfavored" absent an actual
misappropriation of trade secrets).  Thus, while these cases
suggest that proof of inevitable disclosure would not provide a
basis for injunctive relief independent of an express

7

restrictive covenant, they are not applicable to this case where
the doctrine is used as a basis to support enforcement of an
express restrictive covenant.  In fact, "a number of recent
decisions, principally from federal district courts applying New
York law, have used proof of inevitable disclosure as a basis
for enforcing restrictive covenants."  *See e.g. Estee Lauder
Co., Inc. v. Batra*, 430 F Supp.2d 158 (S.D.N.Y. 2006); *Lumex,
Inc. v. Highsmith*, 919 F. Supp. 624, 628 (E.D.N.Y. 1996).

Alternatively, Ferreira argues that the doctrine of
inevitable disclosure is not applicable to the circumstances of
the present case. (Def.'s Mem. at 7).  Specifically, Ferreira
argues that 1) he is not in possession of trade secret
information[2], 2) since he was not involved at the technical
level, he could not duplicate the COLT system or misappropriate
trade secret information even if he wanted to, and 3) the
information that PAI seeks to protect is of no value to his new
employer. (*See* Affidavit of Manuel Ferreira, dated October 25,
2007 at ¶ 2; *see also* Def.'s Mem. at 7).  Therefore, Ferreira
contends that disclosure of this information cannot be
inevitable.

---

[2] Essentially, Ferreira argues that although he "may possess some general knowledge
relating to the Colt system, his lack of technical knowledge is insufficiently
specific to qualify as a trade secret." (Def.'s Mem. at 12). However, Ferreira's "lack
of technical expertise says nothing about whether or not [he] possesses trade secrets
and/or protected confidential information." *Estee Lauder Co. Inc. v. Batra*, 430
F.Supp.2d 158, 175 (2006).

The Court rejects Ferreira's assertion that he is not in possession of trade secret information. In New York, trade secrets are defined as set forth in the Restatement of Torts which states that a trade secret may consist of "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *See Ashland Management v. Janien*, 82 N.Y.2d 395, 407 (1993)(citing Restatement of Torts, § 757, comment b (1939)). In determining whether information constitutes a trade secret a court should consider several factors, including: "(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." Restatement of Torts § 757, comment b (1939). "The most important consideration remains whether the information was secret." *Lehman v. Dow Jones & Co., Inc.*, 783 F.2d 285, 298 (2d Cir. 1986).

9

In this case, PAI has spent $750,000 and more than five years developing COLT. (Compl. at ¶ 33). PAI took measures to protect the secrecy of the software application, giving only approximately six employees password access to COLT. (Declaration of Gregory W. Sahrmann, dated October 18, 2007, at ¶ 13). Ferreira was responsible for supervising the development and implementation of PAI's secret EPP system. (*Id.*). The Court credits the statement made by Dawn Murray, the architect of PAI's new EPP service, that she "regularly met with Ferreira to update him on the development and implementation of COLT, including operational matters and design details." (Declaration of Dawn Murray, dated, October 18, 2007). PAI gave Ferreira password access to the software application and Ferreira was present during an extensive review of the Colt system. (Sahrmann Decl. at ¶ 15). Despite his contention that he was not involved at the technical or source code level, the Court finds that it is more likely than not that Ferreira is knowledgeable about the development and overall design of PAI's secret software application.

Furthermore, Ferreira possesses detailed knowledge with respect to 1) a point of sale terminal which PAI has preconfigured in a proprietary manner and which provides PAI with a competitive advantage; 2) PAI's activation system, "which monitors and controls the activation process for merchant

10

accounts; 3) the contact information for PAI's customers and sales representatives; and 4) information about PAI's sales contracts and marketing strategies." (Sahrmann Decl. at ¶¶ 24-29). All of the above is non-public information which is kept strictly confidential at PAI. (*Id.*).

Having found that Ferreira is in possession of trade secret information, the Court must next determine whether, Ferreira's employment with Cynergy creates a risk that disclosure of this information is inevitable. Factors which guide courts in making this determination include, but are not limited to: "(1) the extent to which the new employer is a direct competitor of the former employer; (2) whether the employee's new position is nearly identical to his old one, such that he could not reasonably be expected to fulfill his new job responsibilities without utilizing the trade secrets of his former employer; (3) the extent to which the trade secrets at issue would be valuable to the new employer; and (4) the nature of the industry and its trade secrets." *Spinal Dimensions, Inc. v. Chepenuk*, No. 07 Civ. 4805, 2007 WL 2296503, *6-7 (N.Y. 2007).

Upon consideration of these factors, the Court finds that Ferreira's employment with Cynergy creates the risk that disclosure of PAI's trade secrets is inevitable. Here, it is undisputed that Ferreira left PAI to work for a direct competitor. It is also undisputed that Ferreira's employment at

11

Cynergy will be in a similar capacity. Thus, even if Ferreira

acted with the best of intentions, "he may unintentionally

transmit information gained through his association with [PAI]

during his day to day contact" with his new employer. *Global*

*Telesystems, Inc v. KPNQwest, N.V.*, 151 F.Supp.2d 478, 482

(S.D.N.Y. 2001). Ferreira argues and a representative at

Cynergy attests that Cynergy is not interested in the COLT

system. (Ordonez Aff. at ¶¶ 7-9) However, the Court credits Mr.

Sahrmann's assertion that this system is a significant

improvement in the area of new account processing and is not

persuaded by Cynergy's professed lack of interest. (Sahrmann

Decl. at ¶ 18). Furthermore, the confidential information in

Ferreira's possession about PAI's customers and marketing

strategies would undeniably be of value to one of its direct

competitors.

Likelihood of Success on the Merits

To obtain the injunctive relief sought, PAI need only

demonstrate that it is likely to succeed on the merits with

respect to one of its claims. Because the Court finds that the

covenant at issue is enforceable it is unnecessary to address

the likelihood that PAI will succeed on its other claims.

As an initial matter the parties disagree as to how this

Court should treat the covenant not to compete. Plaintiff

argues that since the Employment Agreement arises out of the

12

sale of EDR's business to PAI, the restrictive covenant is
governed by the standard for enforceability of non-compete
covenants governing the sale of a business, and need not meet
the higher standard for enforcement of a non-compete employment
covenant.[3]   Courts generally enforce restrictive covenants
ancillary to a sale of business under the premise that "a buyer
of a business should be permitted to restrict his seller's
freedom of trade so as to prevent the latter from recapturing
and utilizing, by competition, the good will of the very
business which he transferred for value." *Purchasing Assocs. v.
Weitz*, 13 N.Y.2d 267, 246 N.Y.S.2d 600, 196 N.E.2d 245 (1963).
By contrast, restrictive covenants in employment contracts are
"subject to more exacting scrutiny than are those in contracts
for the sales of business...[because] [p]ublic policy favors
economic competition and individual liberty and seeks to shield
employees from the superior bargaining position of employers."
*Mathias v. Jacobs*, 167 F.Supp.2d 606, 611 (S.D.N.Y. 2001).

    PAI makes a strong argument that the covenant here was
ancillary to a sale of business rather than an employment
contract.  At the time that PAI acquired EDR, Ferreira was an
owner of the company in possession of 15,000 shares of stock.
In fact, Ferreira executed a Written Consent of the Stockholders

---

[3] Although restrictive covenants in employment contracts and in contracts for the sale of a business are subject to the same basic test, a stricter standard applies to restrictive covenants in employment contracts. *See, e.g., Purchasing Assocs. v. Weitz*, 13 N.Y.2d 267, 246 N.Y.S.2d 600, 196 N.E.2d 245 (1963).

13

authorizing the acquisition. (Pl.'s Reply, Ex. A).  Ferreira
also executed a Contribution Agreement which provided for the
conversion of his EDR stock and which acknowledged that he was a
"sophisticated investor." (Pl.'s Reply, Ex. B).  It is
undisputed that the employment agreement at issue here was
executed in anticipation of the merger between PAI and EDR.
Further, PAI claims to have merged with EDR "primarily to
acquire the talent, technical and business expertise, and
customer goodwill of EDR's employees, including Ferreira." (*Id.*
at ¶ 19).  The Court credits this claim as section 6.2(f) of the
closing document expressly states that Ferreira's entering into
an employment agreement was a necessary pre-condition to the
sale. (Compl. Ex.B).

Accordingly, the Court finds that the "sale of business
analysis" properly applies to this restrictive covenant.
Indeed, the facts of this case are analogous to the
circumstances present in *Misys Intern. Banking Systems, Inc. v.
Two Four Systems, LLC*, where the court treated a restrictive
covenant assumed by an employee with minority ownership interest
as ancillary to a sale of a business.  6 Misc.3d 1004(A), 2004
WL 3058144, 2004 N.Y. Misc. LEXIS 2865 (N.Y.Sup.Ct. 2004).  The
Court, therefore, finds that the restrictive covenant is
enforceable under New York law, which favors enforcement of
restrictive covenants in the sale of business context.  *See,*

14

e.g., *Mathias v. Jacobs*, 167 F.Supp.2d 606, 611 (S.D.N.Y. 2001)(stating that "[r]estrictive covenants in this context are routinely enforced because the buyer has in part bargained for the good will of the seller's customers"). Here, the covenant barring Ferreira from directly competing with PAI for two years is certainly a reasonable restriction, protecting PAI's legitimate interest in the goodwill it bargained for when it purchased EDR.

Moreover, the Court finds that the restrictive covenant at issue here is enforceable even under more exacting standard applied to such clauses in employment agreements. It is well established under New York law that restrictive covenants in employment agreements are "enforceable only to the extent that they satisfy the overriding requirement of reasonableness." *Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 386 N.Y.S.2d 677, 353 N.E.2d 590 (1976). A restrictive covenant in an employment contract is reasonable only if it: "(1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *See BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388-89, 712 N.E.2d 1220, 1223, 690 N.Y.S.2d 854, 856-57 (1999). If a covenant fails to meet all three prongs of this reasonableness standard, it is not enforceable. *Id.*

15

With respect to the first prong, New York courts have held that where, an employee's services are not extraordinary or unique, restrictive covenants are enforceable "only to the extent necessary to prevent the employee's use or disclosure of his former employer's trade secrets, processes or formulae, or his solicitation of, or disclosure of any information concerning the other's customers." *Purchasing Associates, Inc. v. Weitz,* 13 N.Y.2d 267, 272 (1963).

PAI does not contend that Ferreira's services were unique or extraordinary.  Thus, to succeed in enforcing the restrictive covenant, PAI must demonstrate that such enforcement is necessary to protect trade secret information.  The Court has already found this to be the case.

However, Ferreira also argues that the restrictive covenant is unenforceable because it is unreasonable in scope and duration. (*See* Def.'s Mem. at 14).[4]  Courts assessing the reasonableness of the scope of a restrictive covenant in an employment contract must consider "the specific facts underlying the agreement and the nature of the employer's confidential information." *Estee Lauder*, 430 F.Supp.2d at 180.  The "durational reasonableness is judged by the length of time for

_____

[4]The Court limits the geographic scope of the covenant to the continental United States. *See Seidman*, 93 N.Y.2d at 395.  This geographic scope is reasonable as PAI has merchant customers in every state in the continental United States. (Compl. at ¶ 14).

16

which the employer's confidential information will be competitively valuable." *Id.*

In its complaint, PAI asserted that the COLT system was near completion and that it anticipated that the application would be operational in or about October of 2007.[5] In addition to launching the system, PAI will need time to market the application and work out any problems that it may have. Additionally, PAI is entitled to establish its presence in the market as the sole proprietor of the COLT system without being hampered by competition from a former employee in possession of its trade secrets. The Court also notes that by signing the employment agreement, Ferreira knowingly and voluntarily accepted the condition that he refrain from competing with PAI for a period of two years post-employment. Thus, based on the record before it, the Court finds that the two year duration of the non-compete clause is reasonable. Based on the anticipated discovery schedule, the parties should be prepared for trial within six months. If at that time a permanent injunction is issued and the Court finds that a shorter duration would adequately protect PAI's legitimate interests, the Court will

---

[5] In response to an inquiry from this Court on December 9, 2007, PAI advised that it plans to implement the COLT system in phases the first of which is now firmly scheduled for December 17, 2007. Ferreira has objected to this inquiry, arguing that the Court should base its decision on the written record previously before it. The Court agrees and in no way relies on this information in making its assessment.

modify the terms of the covenant accordingly.[6] See Seidman, 93 N.Y.2d at 395.

Ferreira also argues that the covenant is unreasonable because it fails to provide for payment of his salary during the two year non-compete period. (See Def.'s Supp. Mem. at 13-14). While courts will consider whether "an employee receives continued consideration for his loyalty and goodwill," this factor is not dispositive. Bradford v. New York Times Co., 501 F.2d 51, 58 (2d Cir. 1974). Rather, it is only one consideration in the determination of whether the covenant as a whole is reasonable. Here, it is undisputed that Ferreira was compensated in advance by PAI in exchange for his assuming the terms of the employment agreement. Further, this is not a case where the enforcement of the non-compete clause precludes the defendant from all gainful employment within an industry. Ferreira is barred only from working for a direct competitor of PAI. He is not barred from all operational roles in the credit industry.

Thus, for the reasons stated above, the Court finds that the restrictive covenant is reasonable and that PAI has established that it is likely to succeed on the merits of its breach of contract claim.

---

[6] The Court finds no evidence of bad faith or coercion on the part of PAI which would prevent the partial enforcement of the non-compete clause. See Seidman, 93 N.Y.2d at 394.

18

For the aforementioned reasons, PAI's request for a preliminary injunction is GRANTED. Accordingly, Defendant Manuel Ferreira is preliminarily enjoined from 1) working at, or providing services for, Cynergy Data, Inc., or any other direct competitor of PAI within the continental United States for a period of two years commencing on October 1, 2007, the date Ferreira resigned his employment with PAI; and 2) from using, disclosing, or transmitting for any purpose any records, documents, or information containing any confidential or proprietary information of PAI, including information concerning Project COLT. In accordance with Rule 65(c) of the Federal Rules of Civil Procedure, PAI is directed to post an undertaking of $250,000 as security in the form of a bond to cover the possible costs and damages that may be incurred by Ferreira as a result of the granting of this preliminary injunction on or before December 17, 2007. The parties are reminded that this case has been referred to Magistrate Judge Frank Maas for discovery and general pre-trial purposes.

SO ORDERED:

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York
          December 12, 2007

19